## N. & H. WEED *vs.* CARPENTER.

In an action against a party sought to be charged as the *endorser* of a promissory note, where it is proved that the signature of the endorser *is not in the hand writing* of the party, but in that of the maker, it is competent to the plaintiff for the purpose of shewing *authority* in the maker and acquiescence in the endorser, to prove that the defendant remained silent although he received notice of protest, was sued, suffered a default in pleading, and took no measures to defend the suit until after the maker *absconded,* and that the endorser had assumed the payment of other notes similarly situated.

It is for a jury to determine in such a case whether the drawer had *authority* or not, taking into view the connection and relationship of the parties and the probable motives of the endorser. The maker in this case was the brother-in-law of the defendant.

This was an action of *assumpsit,* tried at the Rensselaer circuit in November, 1830, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The suit was against the defendant as the *endorser* of a note for $247, dated 18th June, 1827, drawn by *Lodowickus L. Viele,* payable to the defendant at the Bank of Albany, on the first day of September, 1827. The counsel for the plaintiffs, in his opening to the jury, stated that he would prove that the name of the defendant was endorsed upon the note by Lodowickus L. Viele, *as the agent* of the defendant, and that for the purpose of proving such *agency,* he would show that Viele had repeatedly used the name of the defendant both as *maker* and *endorser* of notes, and that the defendant had admitted his liability to pay such notes, and never disputed the authority of Viele to use his name, until after Viele had absconded. The plaintiff then proved the name of Viele subscribed to the note as *maker* and the name of the defendant *endorsed* upon the note to be *in the hand writing of Viele,* and showed the due protest of the note and *notice* of non-payment sent to the defendant on the 4th September, 1827. The following facts were then given in evidence : In the spring of 1825, *Mr. Wells,* a teller in the Farmer's Bank, Troy, called upon the defendant with a note for about $450, which had been received of Viele and on which the name of the defendant appeared as *maker,*

and asked him whether he had signed the note.   The defend-
ant appeared greatly agitated, and said that it was not a gen-
uine note, that he had never authorized Viele to use his name
in any manner or shape ; he was asked whether he would
assume the note, and after some hesitation, he said he felt in-
clined to save Viele, observing, " he is my brother-in-law," and
inquired of Wells if he knew of any more such paper, who ans-
wered that he knew of none except one other note, made by
Lodowickus L. Viele, payable to and endorsed by *Simon Viele*,
and also purporting to be endorsed by the defendant as *second
endorser*, and exhibited it to the defendant, who, on inspecting
it, declared his name to be a forgery, and again repeated that
Lodowickus L. Viele never had any authority to use his name,
but said he felt anxious to save him and the family from dis-
grace, and finally consented to give and did give his own note
for the amount of the note  to which his name appeared as *ma-
ker,* and to endorse and did endorse his name upon the other
note as *second  endorser,* upon condition that Wells should
*ascertain from  Simon Viele* that his endorsement, which pre-
ceded the defendant's, was genuine.   Wells called upon *Simon
Viele* and inquired of him whether the endorsement of his
name was in his hand writing ; he answered that he had au-
thorized his brother (L. L. Viele) to use his name to a cer-
tain amount, and at the request of Wells, struck out his
name appearing upon the note, and endorsed the note in his
own hand writing.   *Wells* testified that the name of the de-
fendant endorsed on  the *note declared on*, appeared to be an
attempt to *imitate* the defendant's hand writing, and  a person
acquainted with the defendant's hand writing and not *skilled* in
detecting counterfeits, would have  supposed it the genuine
signature of the defendant.   The plaintiffs also gave in evi-
dence another note  made by L. L. Viele, payable to the de-
fendant on  the 31st January, 1827, for the sum of $358,63,
upon which the name of the defendant  appeared as endorser
*in the hand writing of Viele,* which note was duly protested and
*notice* of non-payment sent to the defendant.   The plaintiffs
also gave in evidence another note for the sum of $387, dated
7th November, 1827, payable to H. Knickerbacker five days
after date, to which the name of the defendant was subscribed

NEW-YORK,
May, 1833.

Weed
v.
Carpenter.

as maker, *in the hand writing of Viele;* this note was lodged with an attorney for collection, who, on the 5th December, 1827, wrote a letter to the defendant per mail, informing him that the note was left for collection, and on the 25th of the same month issued a *capias* against the defendant, which was returned by the sheriff duly served ; this suit was subsequently settled, but by whom or in what manner did not appear. It was further shown, that about the 1st January, 1827, the defendant was served with a capias, returnable in *February,* at the suit of one James Lowere, upon which he endorsed his appearance ; that afterwards another capias was issued against the defendant at the suit of the same plaintiff, returnable in *May,* 1827, which, at the request of Viele, was delivered to Viele to procure the defendant's appearance endorsed. Viele returned the writ to the sheriff, with the defendant's appearance endorsed thereon, which was a forgery ; but the sheriff, supposing it to be genuine, returned the writ to the proper office. In the two suits thus commenced, judgments were obtained in one for the sum of $338, and in the other for the sum of $335, and executions were issued thereon on the 13th *August,* 1827, and within a few days thereafter, the sheriff informed the defendant of the executions being in his hands, who promised to pay the same, and repeatedly promised so to do until 31st *December,* 1827, when he told the sheriff that the notes upon which the judgments were obtained in the suits in which he held the executions had *never been endorsed* by him, that he did not consider himself bound to pay, and would not pay either of the executions, and that no writ had ever been served upon him in one of the suits ; it appeared that *L. L. Viele absconded in the night of 29th December,* 1827, after which the defendant told a deputy of the sheriff that he should have to see the Lowere judgments paid, for not making a defence in the suits. It was further proved, that on 20th *October,* 1827, an execution was issued against the defendant for $415, in favor of plaintiffs of the name of Phœnix, and that the defendant was on the same day called on for payment thereof by the sheriff; in January 1828, he told the attorney of the plaintiffs in that execution that he had never put his name, or

authorized Viele to put his name upon the note on which the judgment in favor of the Messrs. Phœnix was obtained ; he was then asked why he had not in *October* informed the attorney or the sheriff that the endorsement of his name was a forgery ; to which he answered that Viele was a family connection of his, that it was therefore a delicate matter, and that he at that time supposed that Viele had property sufficient to pay the judgment. The plaintiff also produced an affidavit, made by the defendant in the last mentioned suit, on 15th *January*, 1828, for the purpose of setting aside the judgment, in which he stated that the first intimation he had of a suit against him in favor of the Messrs. Phœnix, was on the 20th October, 1827, when he was called upon by the sheriff with the execution ; that shortly thereafter he was informed by Viele that the judgment was on a note on which he, Viele, had subscribed the defendant's name as endorser without authority or permission, and engaged to have the execution immediately settled ; that on receiving such assurances, he rested easy, believing that Viele would settle the demand, for which reason he took no immediate steps to set aside the judgment and execution ; and concludes by alleging the endorsement to be a forgery, and denying that he ever authorized Viele to affix his name either as maker or endorser of the note upon which the judgment was obtained. It was admitted that the *appearance* of the defendant endorsed on the writ in favor of Messrs. Phœnix was a forgery. The plaintiffs also produced an affidavit made by the defendant to set aside a default in this cause, made on the 14th *January*, 1828, in which he states that on 20th *October*, 1827, he was served with a *capias* in this cause ; that *soon after* the service of the writ, *Viele* admitted that he had written the defendant's name as endorser upon the note, and engaged that the suit should be immediately settled ; that relying on such assurances, he took no measures to defend the suit until the *eighth day of January*, when he learnt that a default for not pleading had been entered ; and alleges the endorsement to be a forgery. Upon this evidence, the judge *nonsuited* the plaintiffs, who now apply for a new trial.

*S. Stevens*, for the plaintiffs, insisted that had the plaintiffs not been nonsuited, the jury would have been warranted to have found that Viele, in using the name of the defendant sometimes as *maker* and at other times as *endorser* of such notes as he saw fit to put into circulation, acted by the *authority of the defendant*; and if so, it was enough to charge the defendant with the payment of the debt in question. To charge him, it is not necessary to establish the relation of *principal* and *agent* between him and Viele; it is enough if the acts done by Viele, for which the defendant is sought to be made responsible, were *authorized* by the defendant or *acquiesced* in by him when brought to his knowledge. Although the relation of principal and agent need not be shewn here, the law of *principal* and *agent* is applicable, and is decisive against the defendant. Thus, "An agency (says *Chancellor Kent* in his *Commentaries, vol.* 2, *p.* 476, 480,) must be antecedently given or be subsequently adopted, and in the latter case there must be some act of recognition; but an acquiescence in the *assumed agency* of another, when the acts of the agent are brought to the knowledge of the principal, is equivalent to an express authority. By permitting another to hold himself out to the world as his agent, the principal adopts his acts, and will be held bound to the person who gives credit thereafter to the other in the capacity of his agent;" and "where the principal is informed of what has been done, he must *dissent* and give notice of it in a reasonable time; and if he does not, his assent and ratification will be presumed." Now it is undeniable that a party may *authorize* another to make and endorse notes in his name, and that he will be responsible for the payment of such notes as under such authority may be made or endorsed; and although ordinarily such authority is conferred only where the relation of principal and agent exists, it is not necessarily confined to such cases; where it does not exist, higher and more satisfactory proof may be required; but after all, the inquiry is, was the authority antecedently given or subsequently adopted? Apply these principles to this case: here a man, apparently in extensive business, for a series of years passes notes with the name of his brother-in-law upon them, sometimes as *drawer*, at others times as *endorser*;

NEW-YORK,
May, 1833.

Weed
v.
Carpenter.

the party from time to time receives *notices* of protests of notes, to which he knows he never affixed his name, is sued upon those notes, and executions are issued against his property, and instead of repudiating the acts by which he is thus sought to be charged with the payment of money, he *acquiesces* in what has been done, and promises to pay the demands made upon him, and continues so to do until the individual whom he has induced the world to believe acted by his authority *absconds*, and not until then does he deny the authority, or refuse to pay the notes to which he had been made a party. In the case before the court, the defendant received notice of protest on the 4th *September*, was served with a *capias* on the 20th *October*, and yet not until the 8th *January* and not *until after the absconding* of Viele does he deny his authority. If a party should ever be bound who does not *dissent* from an act under an assumed authority, after being informed of what has been done, the defendant in this case cannot escape liability. In support of these positions, the counsel cited *Chitty on Bills,* 23 to 26, 387 ; *Paley on Agency,* 187, 234 ; 2 *Campb.* 450, 604; 2 *Phil. Ev.* 45 ; 2 *Kent's Comm.* 476 to 480 ; 11 *Mass. R.* 97 ; 1 *Esp. R.* 61 ; 3 *id.* 60 ; 4 *Campb.* 88 ; 4 *Wendell,* 219 ; 1 *Johns. Cas.* 110 ; 2 *Mass. R.* 106 ; 3 *id.* 70 ; *Chitty on Contracts,* 61.

*J. Pierson & A. Van Vechten,* for the defendant. The defendant is sought to be charged, on the presumption that Viele had authority to use his name in the making and endorsing of the notes, and it is contended that the circumstances adduced on the trial were such as legitimately to warrant such presumption. This is denied. It is conceded that an agency may be implied from a relation in business between parties, and from the nature of the employment, but not from a relationship in blood or affinity. Agency proceeds on the assumption that the business is transacted for the principal ; for it is only where a party avowedly acts for another, and not for himself, that he is an agent. There is no pretence that Viele ever assumed to act as the agent of the defendant, or that he represented himself as having authority to affix the defendant's name to commercial paper. On the contrary, he

passed the notes to which he had affixed the name of the defendant, as being on their face *genuine signatures ;* they were *imitations* of the hand writing of the defendant, or, in other words, *forgeries.* The circumstances will not warrant the presumption of authority, and they are more than rebutted by the positive proof contained in the affidavits of the defendant, made evidence by the plaintiffs themselves, of the absence of all authority. Nor can it be said that there was an *acquiescence* on the part of the defendant. In the transaction with *Wells,* on the contrary, there was an express disavowal of authority ; and although, from considerations of regard to Viele, the defendant was induced to assume the debts of which Wells had charge, the spurious evidence of agency or authority was destroyed. The only consequence of the silence of the defendant in respect to the *Lowere* executions was to subject himself to the payment of those debts. The reason why he did not sooner apply to get rid of the *Phœnix* judgment is satisfactorily accounted for by the assurances he had from Viele that the debt would be paid, and the belief of his ample ability to fulfil his engagements. The same reasons operated in respect to the debt of the plaintiffs. But the conduct of the defendant upon those occasions cannot subject him to the payment of the demand in this cause. Whatever the rigid rules of morality might have required, as to the exposure of the unlawful acts of Viele, there were considerations influencing the conduct of the defendant which go far to extenuate the omission with which he is chargeable, and which the law, from an indulgence to the infirmities of human nature, will excuse. Allowing the defendant to be censurable for not disclosing the forgery, his silence cannot be construed into a ratification of an unauthorized act, subjecting him to the performance of a contract to which he was not a party ; for it is only on the ground of contract, either express or implied, that the defendant can be charged. Express authority is not pretended ; none can legitimately be implied from the acts of the defendant, and his silence does not avail the plaintiffs, for the principle that silence will charge a party is applicable only where there is an *assumed authority,* and the party omits to *dissent* after knowledge of the act. Here Viele nev-

er *assumed* to act as *authorized* by the defendant, and conse-quently there was no necessity to dissent. Besides, no injury resulted to the plaintiffs from the silence of the defendant ; all they lost was the opportunity of instituting criminal pro-ceedings against Viele, and there is no principle of law which subjects a party against whom a forgery has been committed, to the payment of a debt which he has not contracted to pay as a forfeiture for not immediately making public the offence, unless, in consequence of his silence, a third person sustains injury. Nor is the defendant responsible on the principle that by the assumption of one or more forged notes, other persons were induced to give credit to Viele. In the case of master and servant, where the contracts of the servant have been ratified by the master, the latter is liable, although the servant has been guilty of fraud ; and this is so, because. credit has been given to the *master*, and not to the *servant*. Here the credit was not given to the defendant, but to Viele ; and be-sides, there is no pretence that the plaintiffs gave credit to Vie-le upon the strength of the defendant's assumption of other notes of which he was the apparent endorser. Nor can the defendant be charged, in this species of action, with having enabled Viele to perpetrate frauds upon the community by assuming the false notes. The action is *on contract ;* if the defendant is sought to be charged on the ground of fraud, the remedy of the plaintiffs is in *case,* in which action the defen-dant will cheerfully submit his conduct and motives of action to the investigation of a jury.

*By the Court,* NELSON, J. We are of opinion that the tes-timony in this case should have been submitted to the jury upon the question of fact whether *Viele* had authority from the defendant to put his name upon the note in question as endorser. It is competent to establish the fact by circum-stances as well as by direct proof ; and it may be done either by shewing an authority before the act is done, or by subse-quent ratification. If there is any evidence tending to the proof of the fact, the weight of it, under all the circumstances of the case, belongs to the jury to determine, under a proper direction from the court. That there is some evidence leading

to such a conclusion must be admitted ; the note in question
fell due on the 4th *September*, 1827, and notice of protest was
duly sent per mail to the defendant, which no doubt he re-
ceived, charging him as endorser; on the 20th *October* he
was arrested, and endorsed his appearance on a writ; he suf-
fered a default for not pleading to be entered against him, and
no steps were taken to defend the suit until Viele absconded,
about the 1st of *January*.   The facts in relation to this note,
together with the other circumstances detailed in the case, I
apprehend, will admit of but one explanation ; and whether
that is sufficient or satisfactory, it will be for the jury to deter-
mine, upon a view of the whole case.   The explanation re-
ferred to is, that the defendant was the brother-in-law of Vie-
le, and that his conduct was influenced by considerations of
regard to the character and feelings of the family.   Without
this view of the case, we should consider the facts detailed in
it conclusive upon a jury ; it may or may not be sufficient to
rebut the otherwise strong inference of authority.   A jury will
no doubt give to it its just influence in weighing all the evi-
dence ; a jury from the vicinage is the most competent, and
the only competent tribunal to dispose of the case, so far as
the facts are involved.

New trial granted.