R. P. BELL ADSM. G. W. SHIELDS.

In Case. Argument on a rule to show cause why the verdict should not be set aside &c.

1. A verdict will be set aside, as a verdict against the weight of evidence, where only one witness swears to his belief of the hand writing of the defendant; and nine witnesses, (one of whom was called by the plaintiff himself,) all of them as familiar with the defendants signature, and as well, or better qualified, from their course and habits of business, to judge, than that one witness was, swear to their disbelief of its being the defendant's hand writing : unless there are circumstances in the case tending to sustain and corroborate the plaintiff's witness, and the genuineness of the signature.

2. If a defendant, being informed by the plaintiff, that he is the holder of certain promissory notes indorsed by the defendant, without having the notes shown to him ; at the request of the plaintiff, signs an agreement, reciting that he is such endorser and consenting that the plaintiff may give further time to the maker, upon receiving collateral security, without prejudice to the plaintiff's rights against the defendant, *as indorser ;* and that the defendant will still hold himself " liable to pay the same, *in the same manner,*

*and to the same extent as he was then liable:*" the defendant will not be precluded from setting up on the trial of the cause, that the indorsements were forgeries.

3. Notwithstanding such agreement, the verdict ought to be for the defendant, if the jury believe the name of the defendant has been forged: unless it appears that the defendant signed the agreement in bad faith, knowing of the forgery : or signed it negligently ; and has thereby misled the plaintiff, and deprived him of an opportunity of otherwise securing himself.

And whether even in such case the plaintiff can recover *on the forged indorsements,* or must seek his remedy in an action on the case, for a deceit, or upon a special agreement. Quere?

*I. H. Williamson* in support of rule.

*S. Scudder,* contra.

Argued at February term, and opinions pronounced at September term, 1842.

HORNBLOWER, C. J. This is an action against the defendant, as indorser of two promissory notes, marked and distinguished on the argument, as note A. and note C. The defence set up against both of these notes, was that the name of the defendant, written upon them, were not his signatures, but that they had been forged and counterfeited : and as to note A. it was further insisted by the defendant, that he had received no notice of non-payment. The court being of opinion, that the plaintiff had failed to prove due notice of non-payment of note A. so charged the jury ; and they found a verdict for the plaintiff on note C. only.

Two grounds are relied upon in support of this rule: First, That the verdict is contrary to; or at least against the decided weight of evidence in the cause: and secondly, Because the court refused to charge the jury, that a certain agreement between the parties, which had been given in evidence, did not render the defendant liable, unless the indorsements were in his hand writing.

The plaintiff called a witness who said he was acquainted with defendant's hand writing : he had seen him write his name and " should *take* the indorsement on note A. and also that on note C., to be in his hand writing." On the cross examination he said, he recollected seeing the defendant write three or four

times : he might have seen him do so twenty or thirty times ; but he had no recollection of having seen him write for the last two years. The plaintiff proved in like manner, by the same witness, the defendant's signature to the agreement above spoken of ; and having read the note and agreement in evidence, rested the cause.

The defendant then called eight witnesses, one or two of whom had been his clerk for several years ; two of whom, either was or had been cashiers of banks ; another of whom had been his attorney and counsel, and the rest of them men of business and accustomed to see the defendant's hand writing ; and all of them familiar with it, some for four and five and others for eight or ten years. Each of these witnesses was of opinion, that neither of the indorsements was genuine, all agreed that the signature on note A. was the best imitation and looked most like the defendant's hand writing, but that, that on note C. was a bad imitation : that they had no doubt it was a forgery ; and two or three of them said, they should have pronounced it to be so, upon seeing it, if there had been no dispute about it.

The plaintiff then called, *Abr. C. Campfield,* a clerk in the Morris Bank, who testified, that he should think the indorsement on note A. to be Bell's writing ; but that on note C. does not look so much like it ; and that he should not think it to be Bell's genuine signature.

Here then are nine witnesses, including one called by the plaintiff himself, who all bear testimony against the genuineness of the indorsement on note C. on which this verdict was rendered ; while only one witness, (Jacob Lowrance,) and he, as appeared upon his cross examination, with less opportunities of knowing or judging than any of the others, simply testified, that he should think the indorsement on that note to be in Bell's hand writing.

This verdict is so palpably in direct opposition to the evidence ; or at least so decidedly contrary to the great weight of evidence in the cause, that it must be ascribed to some other influence than any that result from the testimony on this point; and in my opinion, it can be ascribed only to a misapprehension of the legal effect of the written agreement before spoken of.

Bell had been in the habit of indorsing notes for G. W. Tyson & Co., in New York, by himself and sometimes by his son,

as his attorney in fact, for that purpose. In August, 1838, Shields, the plaintiff, got into his possession these two notes, purporting to be indorsed by Bell; and either Shields or G. W. Tyson & Co. applied to Bell, for his consent, that time might be given on these notes, without prejudice to the claims of the holder against the indorser. Bell supposing the signatures to be genuine, was willing to accommodate the parties, provided the notes had actually been indorsed by himself; but was not willing to interfere, if the indorsements had been made by his son, as his attorney. He therefore copied the agreement which had been sent to him, and having signed it, he sent it by his clerk to New York, with instructions to look at the notes and see whether they were indorsements by himself or by his son, as attorney; if the former, he directed his clerk to deliver the agreement; but otherwise, to bring it back with him. The agent went to New York, called on the plaintiff and requested to see the notes; they were shown to him; he looked at them so far as to ascertain, that the indorsements had not been made by the attorney, and having no suspicion of forgery, he handed the agreement to G. W. Tyson & Co. It was in the following words.

"I R. P. Bell being the indorser of two notes, made by Geo. W. Tyson & Co.; one for three hundred and seventy-nine dollars and twenty cents, and the other for three hundred and eighty-five dollars and sixteen cents, and at present held by Geo. W. Shields of &c.; now I do consent and agree with said Shields, that any arrangement which may be made between said Shields and Geo. W. Tyson & Co. in the way of said Shields' receiving further collateral security from the said Geo. W. Tyson & Co. for the payment of the said notes, or delaying proceedings upon said notes, shall not discharge the responsibility of me the said R. P. Bell as indorser of said notes. But notwithstanding any arrangement in respect of said notes, between the said parties, I will still hold myself accountable as indorser upon the said notes, and liable to pay the same, *in the same manner, and to the same extent as I now am under,* as if no such agreement or arrangement had been made."

If this agreement can help the plaintiff, and it must be, either because it is such an admission of his indorsement, as concludes

him and effectually estops him from denying, that they are his : or, because the defendant, by his own inattention and carelessness has beguiled the plaintiff into a false security, and thereby prevented his taking measures to secure himself in some other way.

Let us examine these suggestions and see if there is anything in them.

It is not pretended, that it was a *fraudulent* admission : that Bell knew they were not his endorsements, and only meant to mislead the plaintiff. The most that can be said is, that by his own negligence, he admitted what he ought not to have done, and thereby injured the plaintiff. I am not satisfied that the defendant is even chargeable with that. He receives from New York a written statement, representing that the plaintiff was the holder of two notes indorsed by him. Knowing that he had been in the habit of making such indorsements, and putting confidence in the representation, he signed his name to it.

But suppose he did ignorantly and unadvisedly admit his indorsements ; he is not bound by such admission at all events and under all circumstances. It would be *nudum pactum :* as much so as a promise to pay the money upon a forged bond or note. This is the doctrine of the books. *Loyd* v. *Lee,* 1 *Str.* 94 and cases there cited ; *Cockshott* v. *Bennett,* 2 *T. R.* 763 ; *Atkinson* v. *Settree, Willes R.* 483 in note.

In *Hall et al.* v. *Huse,* 10 *Mass. R.* 39, the note was shown to defendant ; he admitted his signature, and requested time, stating the source from which he expected to receive funds with which to pay it. The plaintiffs rested on this acknowledgment, and took no measures to secure payment from the indorser, who sometime afterwards absconded. The judge instructed the jury, that notwithstanding all this, if they believe from the evidence, that it was not the defendant's signature, they ought to find for him : they did so ; and the court refused to set aside the verdict.

· In this case however, the acknowledgment and promise were not absolute and unqualified. The defendant consented to hold himself accountable upon the said notes, not absolutely ; but, "as indorser," and " *in the same manner, and to the same extent* " as he *then* was. Was he *then* liable as indorser ? If the indorsements were forgeries, he clearly was not ; and any attempt to make him so, by this agreement must be vain and unjust.

But is said, that by this inconsiderate agreement and admission on his part, however innocently entered into, he misled the plaintiff and disarmed him of all efforts to get other security. It seems to me, if this fact is so, the plaintiff's recovery cannot be *on the indorsements*, unless he can prove them ; but he must resort to an action on the case for a deceit, or on a special contract.

But I have looked in vain in this case, for any evidence of the fact, that the plaintiff was in reality, or in possibility, injured or exposed to injury, by any delay on his part, induced by this agreement signed by the defendant. It does not even appear, that in consequence of it, he took any collaterals, and gave further time. If he did, he is better off. If he did not, he has lost nothing. If Geo. W. Tyson, & Co. failed to give him additional security, and get further time, he was at liberty at once to sue both makers and indorser.

Upon the whole, there is reason to believe, in review of this case, that justice has not been done, and I think a new trial ought to be granted on both grounds.

WHITE, J.   This suit was brought against the defendant as indorser of two promissory notes ; one dated the 6th June, 1837, for the payment of three hundred and seventy-nine dollars and twenty cents, payable five months after date, and is marked A.

The second note, called exhibit C. same date, for the payment of three hundred and eighty-five dollars and sixteen cents, at eight months ; both notes purporting to be drawn by persons in New York, using the name and style of George W. Tyson & Co. payable to order of defendant, Bell.

The case was tried at the Morris County Circuit, in December, 1840, before Justice Ford ; and as there was not any, or sufficient evidence of a demand of payment of note A. for three hundred and seventy-nine dollars and twenty cents, the verdict of the jury was not rendered for any part of that note.

The defence set up by the defendant was, that the signature or name Robert P. Bell, on the note marked C. as well as that on note A. were not genuine signatures of the defendant, and on trial the question was, whether the indorsement was or was not a forgery.

Bell adsm. Shields.

On the part of the plaintiff, Jacob Lowrance was called as a witness. He said he was acquainted with the hand writing of the defendant, having seen him write three or four times; and he said maybe twenty times; but had no recollection of having seen him write in the last two or three years. He had seen defendant write once at a tavern and once when they settled. That he should *take* the indorsement on note A. to be defendant's hand-writing; and he should *think* the indorsement on note C. to be Bell's hand writing. This witness says he judges of the hand writing of Mr. Bell, from having seen him write and from re-collection of the character of his hand. On this evidence of the hand writing, together with the agreement signed by the defend-ant at Stanhope, dated the 29th day of August, 1838, the plain-tiff rested his case; and here is the whole strength of the evi-dence submitted to the jury, by the plaintiff, to prove the indorse-ment on note C. to be the genuine signature of the defendant; for though another witness was afterwards called by the plaintiff, he don't strengthen the evidence as to the signature or indorsement on note C. I allude to the evidence of Abraham Canfield.

The defendant to support the defence in this case, called An-drew A. Smalley, who had been Postmaster at Stanhope, where defendant resided, and was his son-in-law; who, after testifying respecting the agreement signed at Stanhope in August, 1838, said he had seen Mr. Bell write frequently, and being shown the notes, he said as to note marked A, I don't think the indorsement of the name of Robert P. Bell, on this note, is Mr. Bell's writ-ing: and as to note C. I do not believe it is Mr. Bell's writing, his name indorsed on it does not much resemble his hand writ-ing, it is hardly an imitation of his hand writing. The other marked A. resembles his hand writing more. I have been ac-quainted with his hand writing for the last nine or ten years and am very familiar with it.

Edward Condict Esq., another witness called by defendant, testified thus: I am acquainted with the hand writing of Mr. Bell, have seen him write frequently, and have seen his hand writing. The indorsement on note A. of the name of Mr. Bell is a good imitation; but I should have serious doubts of its being his writing; I should not think it was his hand writing; and as to note C. I should say, at first sight, that the indorsement of

the name of Robert P. Bell, was not his hand writing, and that without any hesitation. This witness was the Cashier of the State Bank at Morris, in which Mr. Bell had some considerable business.

On cross examination he said, the difference between the genuine signature of Mr. Bell and his name indorsed on note A. is in the scroll, and points out some difference in the name Bell. As to the indorsement on note C. it does not look at all like any of his, that I have seen; and I have been acquainted with his hand writing for a number of years.

James Wood Esq. This witness had been the Cashier of the Morris County Bank, where he had done business with Mr. Bell. As to the signature, this witness says, I am acquainted with Mr. Bell's hand writing. I have seen him write. I have been acquainted with his hand writing for eight or ten years past, and from what I know of Mr. Bell's writing, I should not think he wrote his name as indorsed on the note A.; it resembles his hand some, but I do not think it is his. The indorsement on note C. does not look so much like Mr. Bell's writing as the other. I don't think it is his, I think I should have pronounced this a forgery, if I had never heard anything about his name being forged.

On cross examination the witness said, he saw those notes the day before, for the first time. That Mr. Bell was with him a part of the time when he examined them, and that if he had not heard anything about Mr. Bell's name being forged, he thought he should have taken the indorsement of his name on note A. to be his; but the name on note C. he was sure he would not have taken to be genuine.

Robert S. Wintermuit, testified that he had lived at Stanhope, from 1836, to 1840, that he had been acquainted with defendant four or five years, had seen him write his name frequently. Note A. has some little appearance of Mr. Bell's hand writing, but I should not take it to be his. I don't think the name of Mr. Bell, on note C. is his hand writing; it has not so much of a resemblance to his genuine signature as that on the note A.

On cross examination the witness said, he was Clerk for A. A. Smalley & Co.; that there is a difference between the genuine

signature and these indorsements, in the genuine the B and e are connected.

Aaron H. Griggs says, I am acquainted with Mr. Bell's hand writing and have been for six or eight years or more. Lived at Stanhope when Bell came there. From the knowledge I have of Bell's hand writing, I should not suppose the indorsement of this name on note A. was written by him; and I am satisfied, that the name of Robert P. Bell, on this note, is not Mr. Bell's signature.

On cross examination this witness said, he was a second cousin to defendant; that he distinguished the signature on those notes from his genuine signature, from the general character of the writing. The scroll on note A. is different from his. The P and the form of the B in Bell, is not like Mr. Bell's genuine signature.

Stephen B. Grover another witness says, he used frequently to see Mr. Bell sign his name to affidavits taken before him by Mr. Bell, when he was doing business for the Morris Canal and Banking Company. That it is about five years since he saw him write. That he became almost as familiar with his hand writing as his own. The signature on note A. resembles at first view, the hand writing of Mr. Bell, but upon close inspection, he would doubt its being his hand writing. He don't believe it to be his. As to note C. this witness says, I don't hesitate to say, the name of Robert P. Bell indorsed on this note is not his genuine signature.

On cross examination he said, the notes were shown to him about two hours since. That it is difficult to point out the difference between the indorsement and the genuine signature: that he don't recognize in those indorsements, the peculiar character of Mr. Bell's hand, with which he used to be familiar.

Thomas L. King said, I have known Mr. Bell four or five years. I am acquainted with his hand writing. I have seen him write frequently. I should think the indorsement Robert P. Bell on note A. a good imitation of Mr. Bell's writing; but it does not agree with it exactly. From my knowledge of his writing, I should not think it his. My opinion is, that the indorsement of Bell's name on note C. is not his hand writing. I have seen Mr. Bell write more than once within the last year. The in-

dorsement on note A. is another hand than Mr. Bell usually writes. I think the same person wrote the name on both notes; and I think the person who wrote them was a better penman than Mr. Bell.

Noah T. Martin. I am acquainted with Mr. Bell's hand writing, but have not seen him write much for the last two years; before, I was well acquainted with his hand writing. The indorsement of the name Robert P. Bell, on note A. has the appearance of his writing, but I doubt its being his, and that on note C. I should not take to be his hand writing.

On cross examination this witness said, if he had heard nothing about Mr. Bell's name being forged, he would have taken the indorsements for genuine; but on examination he now thinks they are not genuine; the B and e in the word Bell, are not connected as they are in the genuine signature. The letter P. in the name is longer and not so full as in the genuine, as he usually makes it.

On the part of the plaintiff, Abraham Canfield testified, that he had been Clerk in the Morris County Bank where Bell did some business; and he had seen him write, and he thinks within two years. He said he should think the indorsement on note A. was defendant's hand writing. As to note C. I should not think the indorsement on it to be Mr. Bell's genuine signature.

On this evidence, together with what may be collected from the signature of Mr. Bell to the agreement made at Stanhope in Aug. 1838 and the facts connected with that transaction; after the judge had decided, that the jury could not found their verdict on the first or note A. for want of evidence of due notice of demand and non-payment, the jury rendered a verdict for the plaintiff for the amount due on note C. being four hundred and thirty-three dollars, and the defendant not being satisfied with the verdict, now calls on this court to grant him a new trial, and has assigned for cause:

First. That the verdict is contrary to law.

Second. Contrary to and against the evidence.

Third, That it is against the weight of evidence.

The principal question for the jury was, whether the name of the defendant on note C. was or was not a forgery.

From the whole evidence, independent of the agreement made

at Stanhope, dated 29th August, 1838, the weight of evidence I think, was decidedly against the plaintiff. Except one witness, the whole number, all of whom had knowledge of the hand-writing of defendant, and good opportunity to form an acquaint-ance with the character of his hand, and to form an opinion of the signature, and some of them from their occupation or situa-tion being competent to judge of hand writing, hold one uniform opinion ; and that is, that the signature was not in their judgment, the genuine signature of Mr. Bell.

But it is said, that the defendant recognized this his indorse-ment of those notes, by his own act and under his hand, after the notes became due, and were in the hands of the plaintiff Mr. Shields. This makes it necessary to inquire into the effect of this agreement. There is no question but this agreement was made by the defendant, after Shields became the holder of those notes.

To ascertain the effect of this evidence, on the true question in this cause; which is forgery or not, in the indorsement on note C. the court must look into the circumstances under which this agreement was made. The note was given by Tyson & Co. payable to the order of defendant. Tyson, one of the company, was the son-in-law of the defendant. For this company the de-fendant had been in the habit of indorsing sometimes himself, and sometimes by his son as his agent or attorney, duly authorized for that purpose. The company resided in and were doing business in New York, where the plaintiff resided. The defendant was resident and in business in Stanhope, in the State of New Jersey. The note C. fell due on the 6th February, 1838, and was proba-bly then in the hands of Shields, the plaintiff.

On the 29th August, 1838, six months after due, the defendant was called upon at Stanhope, to sign the paper or agreement of that date. At that time the note was not produced or shown to defendant ; nor is there any evidence that the defendant had ever seen the note. On the contrary, it is to be inferred from the evidence, that he had not then seen the note, if he had not actu-ally indorsed it. It is probable he had notice of the non-pay-ment of this note, and considered himself liable, as indorser, as no doubt he was if the indorsement was genuine ; and the object and true intent of the agreement was to hold him still responsible,

notwithstanding any arrangement which Mr. Shields the holder should make with Tyson & Co. for their accommodation. He readily assented to this, and was willing and did agree, that any arrangement which the drawer and holder should make, should not change his liability ; but he would stand bound, as he then was, liable in the same manner and to the same extent as he then was.   This agreement was, no doubt, a fair, honest and good agreement on both sides.

Now if the defendant had known at the time, that the indorsement was a forgery and had with that knowledge signed this agreement, it might have weight in this cause, and if the plaintiff had received those notes for a bona fide consideration, after this recognition of the indorsement, the defendant would probably have been liable.

But the agreement under the circumstances in which it was made, has not this effect.   The liability of the defendant remained as it was before, neither enlarged or diminished.   Was he then liable to pay the note if the indorsement was a forgery.   I think not.   Did this agreement bind him to pay a note drawn by Tyson & Co. in which his name was forged by them or any other.   I think not.   What then was the weight of evidence as to the indorsement ?

It is a well settled rule, that where a man pays money without any legal obligation to do so, under a mistake of a fact, and without the means of knowing the truth, if he is induced to pay under false representations, he may recover the money back ; but not so if the payment be made with full knowledge of the fact or the means of knowing ; 2d Hen. Black. Rep. 252 ; 9 Cowen, 674; but it must be a mistake of fact, not an error in law.

If a party believing, that a certain state of things exists, comes to an agreement with such a belief for its basis, on discovering the error, he may be remitted to his original rights.   1 Wend. 355.

In the case in 10 Wend. 403, where it was proved, that the name of the indorser was not his hand writing, but the hand writing of the drawer or maker ; it was held to be competent for the indorsee to prove, that the indorser, after notice of protest given to him, remained silent and suffered proceedings to go on until the maker absconded.   This was shown to the jury as evi-

dence of his assent; but in that case, the drawer was the brother-in-law of the defendant, and the defendant had knowledge, that his name had, prior to that, been forged by him.

In the case before the court, there is no evidence, that the defendant knew that the drawers had ever made an improper use of his name.

It is, I think, a little remarkable, that when it was known to the plaintiff, that the defence set up by the defendant was, that the indorsements were forged, that there should have been only two witnesses produced to prove the hand writing; and still more remarkable, that the only one of these witnesses who appears to have been in a situation to become a judge of writing, and had an opportunity of knowing, particularly the hand writing of Mr. Bell, should say, he did not think the name of Robert P. Bell, on the note C. was his genuine signature.

Surely the witnesses in number, intelligence and skill in hand writing, who testified, that the signature on note C. was not genuine, far overbalanced the testimony of Mr. Lowrance, the only witness who testified to the contrary.

I think a verdict against one charging him with the payment of a note as indorser, on such evidence as was given in this case, highly alarming. If jurors on such evidence found a verdict against one as indorser, I don't think any man safe, and if courts confirm such verdicts, the sooner a statute passes requiring a subscribing witness to every indorsement, the better.

In my opinion the verdict in this case should be set aside, and a new trial granted.

Nevius, J.   This action is brought against the defendant as the indorser of two promissory notes drawn by George W. Tyson & Co.   The first, dated 6th June, 1837, for three hundred and seventy-nine dollars and twenty cents, payable in five months, and the second, of the same date for three hundred and eighty-five dollars and sixteen cents, payable at eight months. The plaintiff on the trial at the Morris Circuit, in December, 1840, proved the defendant's signature as indorser of said notes, by one witness, and read them in evidence.   He also proved the defendant's signature to a paper in the words following, viz.— (which, *Vide ante, page* 96.)

Upon reading the foregoing agreement and certain depositions taken by agreement, the plaintiff rested his cause.

The defendant then called eight witnesses, some of whom were officers of .banks where defendant had been accustomed to do business, and all of whom testified, that they were acquainted with his hand writing, and that the indorsements on said notes were not, in their opinion, in the hand writing of the defendant. They concurred in the opinion, that the indorsement on the first of the notes, bore some resemblance to the defendant's signature ;. but, that on the second note was wholly unlike it.

He further proved, that the agreement of which the foregoing is a copy, was sent to the defendant at Stanhope, in the summer of 1838, and after being signed by defendant, he entrusted it to his son-in-law with instructions to go to New York and examine the notes in question, [saying at the time he did not recollect having indorsed them himself,] and if they were indorsed by his son, as his attorney, not to deliver the agreement, but if not so indorsed, then to deliver it to George W. Tyson. That in pursuance of these instructions the notes were examined by this agent, who finding that they were not indorsed by defendant's son as attorney, delivered the paper to Tyson. The agent testifies, that he did not examine the signatures with the view of ascertaining whether they were genuine, but only to determine whether they were signed by his attorney.

Upon this evidence, which is very briefly stated, the jury rendered a verdict for the plaintiff, for four hundred and thirty-three dollars and one cent.

Dissenting Opinion.

. In the course of the argument, it was alleged and seemed to be admitted, though it does not appear by the case presented, that the verdict was upon the second note only. I therefore assume this fact and proceed to inquire, whether this verdict is sustained by the law and the evidence. Two questions are presented.

First, Were the indorsements in the hand writing of the defendant or made by his authority and direction ?

Second, If they were not, is the .defendant legally liable on account of the agreement made and signed by him in Aug. 1838.

Upon the first of these questions, it would seem from the case, that the verdict was against the weight of evidence. Yet in a case of this kind, presenting a question of fact, which is among the most difficult to decide, I should not be disposed to disturb the verdict. The jury had the witnesses before them and had an opportunity of judging with much greater certainty than we can, what effect should be allowed to the opinions expressed by them. It is not the number of witnesses that give weight to opinions on a question like this. It is the intelligence, and opportunity which they may have to form a correct opinion, on the subject of the hand writing. Of this the jury were certainly the best judges and this court cannot say, that they did wrong in giving less weight to the opinions of the defendant's eight witnesses, than to that expressed by one or two witnesses on the part of the plaintiff. The latter may have exhibited in their examination a better and safer judgment, offered sounder and better reasons, and been better acquainted with the defendant's signature, than the former. I am not therefore, prepared to say, that the jury did wrong. But it is clear that the evidence in support of the genuineness of defendant's signature upon the first note was stronger than upon the second, it may therefore be asked with propriety, how it happened that the jury rendered a verdict against the defendant on the second note and not on the first. This can easily be answered by what fell from counsel in the argument, that upon the trial the judge instructed the jury, that the evidence did not prove a notice of demand and non-payment. If this be so, we have not the means of ascertaining, from the imperfect state of the case presented, whether the court were right or wrong, in this particular, for none of the evidence on that point is presented. The omission therefore, to find against the defendant on the first note, involves no inconsistency on the part of the jury.

But if in truth the defendant had not indorsed this note for three hundred and eighty-five dollars and sixteen cents, I am nevertheless of opinion, that the defendant was liable for it by virtue of his agreement dated in 1838. When that agreement was signed, the plaintiff was the holder of these notes and the defendant was advised of that fact by the communication received from the drawer's inclosing this agreement for his signature.

The law will therefore presume, so far as the rights of third persons are concerned, that he knew, (for he ought to have known,) whether he had or had not indorsed these notes. If he had not, it was his duty so to have advised the holder as soon as he found he had in his possession notes purporting to be indorsed by him. Had he done so, the plaintiff might and would at once have proceeded against the defendant and extended to him no forbearance and thereby may have secured his money. But by signing this agreement the defendant acknowledged his liability, in other words, that he had indorsed the notes and left the plaintiff under the full conviction, that his money was safe. He cannot now turn round and set up a defence of which he should have notified the plaintiff. He is estopped by his own act, for it may have been the means of plaintiff's losing his claim against the drawers, and for this the responsibility should rest on defendant. The rule, that where one of two innocent persons must sustain a loss, it should fall upon him who has occasioned it, is applicable to this case.

I think the rule for a new trial should be discharged.

ELMER, J. did not hear the argument.

WHITEHEAD, J. had been of counsel in the cause, and gave no opinion.

*New trial granted.*