No. 8213.

SCHEIBLE *v.* SLAGLE ET UX.

PLEADING.—*Demurrer to Reply, When Not Carried Back to Answer.*—Where a demurrer to a reply has been overruled, the plaintiff can not on appeal raise the question whether the demurrer should have been carried back and sustained to the answer.

VENDOR AND VENDEE.—*Recoupment.*—*Eviction.*—A grantee of property, of which an incorporeal hereditament forms a material part, is entitled, as against the grantor who conveys and warrants the property to him, to recoup against the purchase-money the value of such incorporeal hereditament from which he is evicted, the measure of damages being the value of the right from which the grantee is evicted ; and such value is ascertained by finding what proportion the value of the part from which the grantee is evicted bears to the entire purchase-price.

SAME.— *Judgment.*— *Injunction.*— A judgment, perpetually enjoining a grantee from using an easement which his grantor assumed to convey to him, may be treated as an eviction.

89   323
128   465
129   254
89   323
131   126
89   323
164   582
89   323
166   107

Scheible *v.* Slagle *et ux.*

SAME.—*Deed.—Description.—Evidence.*—The office of a description in a deed is not to identify the land conveyed, but to furnish the means of identification; and, when there is a general designation of the property intended to be conveyed, parol evidence is competent to show what property the description covers.

SAME.—*Fraudulent Representations.*—Fraudulent representations as to the character of the property, relied upon by the purchaser and resulting in damages to him, is a defence to the action for the purchase-money.

SAME.—*Evidence.—Judgment.—Appeal.—Recoupment.—Measure of Damages.—Deed.—Covenants, Breach of.—Eviction.*—Suit to foreclose a mortgage for purchase-money of a mill. The defence was that the plaintiff covenanted that he had a right to maintain the dam at a height of 7½ feet, whereas the right was to a dam only 4½ feet high, claiming damages. When the conveyance was made, a suit was pending against the plaintiff, wherein it was afterwards adjudged that the dam must be reduced to a height of 4½ feet, but the cause was in the Supreme Court, pending on appeal.

*Held*, that the record of this judgment was proper evidence for the defendant, and not affected by the appeal.

*Held*, also, that the judgment, being in the form of an injunction, bound the defendant, though not a party to it, and operated *per se* as an eviction from part of the property, which enabled the defendant to recoup for breach of covenant, his damages to be the value of the right from which he was evicted, measured by ascertaining the proportion it bears to the whole purchase-price.

*Held*, also, that, inasmuch as the deed did not specify the height of the dam, but granted all privileges to the real estate belonging, parol evidence was admissible to show its height at that time, and that the right to so maintain it was what was warranted by the deed.

SAME.—*Contract.—Fraudulent Representations.*—Where, in the sale of a mill the vendor, by falsehood, fraudulently induces the vendee to believe that he has a right to a greater height of dam than he really has, to the injury of the latter, he may recoup when sued for the purchase-money.

SUPREME COURT.—*Instructions.—Record.*—Unless all the instructions given are in the record, the Supreme Court can not say there was error in refusing instructions asked.

INTERROGATORIES TO JURY.—When the court sends to the jury interrogatories fully covering all material questions of fact, all other asked may be refused.

NEW TRIAL.—*Surprise.*—It is seldom that the plaintiff should be granted a new trial on account of surprise.

From the Shelby Circuit Court.

*N. R. Keyes* and *S. W. Smith*, for appellant.

*O. J. Glessner, E. K. Adams* and *L. J. Hackney*, for appellees.

ELLIOTT, J.—Appellant sold to the appellee David H. Slagle a mill and appurtenances, and the latter executed several notes and a mortgage to secure part of the purchase-money, and this action is based on these instruments. The answer is in several paragraphs, to which replies were filed, and demurrers addressed to them by the appellee were overruled. The appellant assigns as error, as his brief puts it, "That the court did not carry back the demurrer filed to plaintiff's several paragraphs of reply and sustain them to the several paragraphs of answer."

We know of no rule of practice which entitles the appellant to a decision upon the sufficiency of the answers. He did not challenge them by demurrer, nor by motion for judgment *non obstante veredicto*, nor did he in any form challenge their sufficiency in the court below. The ruling on the replies was in his favor, and the exception taken was that of his adversary, so that we have a case where the complaining party neither attacked the pleading in the court below nor took any exception. The case is altogether unlike one in which a demurrer is sustained to a reply in a case where the answer is bad; in such a case the ruling is adverse to the complaining party, and the exception is his; while, in the present case, the only ruling he calls on the court to make is in his favor, and the only exception reserved is that reserved by his adversary.

It is well settled that an assignment of error does not present the question of the sufficiency of an answer or reply unless the question was, in some appropriate method, presented in the trial court. The rule as to the complaint is, by force of an express statute, different, but the statute does not embrace any other pleadings.

We are not unmindful of the common-law rule, that a demurrer searches the record, nor have we lost sight of the rule that a bad reply is good enough for a bad answer. It is, however, quite clear that the common-law rule can not prevail in all its rigor under the code. For a long time it was held, and

with great reason, that a demurrer to a reply would not reach back to the answer; but that doctrine must be regarded as overthrown by the case of *Wiley* v. *Howard,* 15 Ind. 169, and cases built upon it. The application of the rule that a demurrer will be carried back to the answer has been confined to cases where a demurrer was sustained to the reply and the plaintiff appealed; or to cases where the demurrer was overruled and the defendant appealed. It is obvious that the case in hand is unlike either of the cases mentioned.

It is the theory of our system of civil procedure, illustrated by many cases, that a party who secures all he asks at the hands of the trial court, can not complain on appeal. Here the appellant only asked that his replies be declared good; his request was granted, thus giving him all he asked, and he is in no condition to complain.

It is the general rule that a party can not have the benefit of a point not properly made in the trial court, and to give a plaintiff who passes an answer without a demurrer, and has a ruling in his favor on a demurrer to his reply, a right to attack the answers on appeal, would be conferring on him a right to make a point not brought before the court below. This would be an unjust violation of the general doctrine.

A party who secures, as did the appellant, a ruling in his favor, can have no available exception, and this principle is against the rule for which counsel contend. Our statute requires that all rulings shall be excepted to, and we have neither the power nor inclination to abrogate this provision. We could not do it if we would, without overturning a long line of decisions. In such a case as this the plaintiff who declines to demur to an answer, and elects to reply, can not take an exception to a ruling in his favor sustaining his pleading. There is, therefore, no exception, and where there is no exception no question is presented except in cases where a different provision is expressly made by statute.

If a plaintiff succeeds, and the defendant insists that de-

murrers were erroneously overruled to the reply, then it is competent for the former to meet the latter with the proposition that the answer was bad, and that a bad reply is good enough for a bad answer, and thus avert a reversal. But the present case is altogether different. The appellant got all he asked, reserved no exception, and relies for a reversal upon a point not presented to the trial court. In the case first stated, a defendant is seeking a reversal where he has no answer deserving a reply, and he may, with abundant reason, be met with the proposition that his bad answer merits nothing more than a bad reply.

We think there are three classes of cases: *First.* Where the answer and reply are both bad, and the defendant seeks a reversal on the ground that a demurrer has been erroneously overruled to the reply. *Second.* Where both answer and reply are bad, and a demurrer is sustained to the reply, and the plaintiff asks a reversal on the ground that the demurrer was improperly sustained to the reply. *Third.* Where the plaintiff, without demurring to the answer, replies, and the court overrules the defendant's demurrer to the reply, and the plaintiff asks a reversal because the answer is bad. It is obvious that the first and second classes are alike in principle, but are both essentially different from the third, and that the same rule may be applied to the first two classes; not, however, to the third without a palpable violation of principle.

At common law, it was not necessary to reserve exceptions, and for this reason, if for no other, the rule which prevailed under that system of practice can not be given full force under the code. To give it full scope would make nugatory the statutory provisions upon the subject of exceptions.

The defence to the action was stated in various forms. These defences, however, all turned upon the question whether the height at which the dam might be rightfully maintained was $7\frac{1}{2}$ feet or $4\frac{1}{2}$ feet, the appellee claiming that the appellant had both represented and covenanted that he had a right to

maintain the dam at the height first mentioned, but in fact had a right to maintain it at 4½ feet only. The appellee was permitted to give in evidence the record and judgment in an action brought against the appellant, and pending when the former purchased, wherein it was adjudged that the height of the dam must be restricted to 4½ feet. This evidence was competent. The judgment was in effect the same as an ordinary judgment of eviction, and no one doubts that a judgment of eviction may be given in evidence to show the grantor's want of title.

The fact that the judgment had been appealed from did not destroy its competency. An appeal does not impair the force of a judgment, although it stays its execution. *Buchanan* v. *Logansport, etc., R. W. Co.*, 71 Ind. 265 ; *Nill* v. *Comparet*, 16 Ind. 107 ; *Burton* v. *Reeds*, 20 Ind. 87 ; *Burton* v. *Burton*, 28 Ind. 342.

The general theory on which the trial court rested its instructions was, that a right to maintain a dam at a certain height is a part of the property assumed to be conveyed in a deed purporting to convey the mill property, and that, if the right was to maintain at a less height, there was, in cases where that fact has been judicially determined, an eviction, and that the grantee might, without surrendering possession, recoup the damages sustained because of the partial eviction. It is necessary to consider this theory before examining the instructions in detail.

In cases where the height of the dam adds materially to the value of the property, the right to so maintain it must be considered as a part of the thing purchased, and if the purchaser is deprived of it because his vendor did not possess it, he, the purchaser, may treat the case as one of partial failure of title, and, without surrendering possession, maintain a defence against an action for the recovery of the unpaid purchase-money. *Traster* v. *Snelson's Adm'r*, 29 Ind. 96. We are referred to the case of *Van Nest* v. *Kellum*, 15 Ind. 264, as declaring a different doctrine; but that case is not in point.

There the damages suffered were merely nominal, and there had been no disturbance of possession ; here there was a disturbance amounting to a partial eviction, and there was, also, substantial damages.

The right to maintain a mill-dam at such a height as will furnish the water necessary to supply power to effectively and properly propel the mill is unquestionably property, and is embraced in the conveyance of the mill. If the grantor has no right to maintain the dam at the height covenanted, and there is a judicial decision of this question, and the grantee suffers injury because of the deprivation of the right to maintain the dam as covenanted, he is entitled to compensation for the loss sustained. The covenants of the deed extend to and cover the incorporeal as well as the corporeal hereditament, and if the title fails to the former, and there is an eviction, there is a breach of the covenants of the deed. Angell Watercourses (7th ed.), section 153*a*.

A grantee of property, of which an incorporeal hereditament forms a material part, is entitled, as against a grantor who undertakes to convey and warrant the property to him, to recoup against the purchase-money the value of the incorporeal hereditament from which he is evicted. The measure of damages is the value of the right from which the grantee is evicted. 2 Sutherland Dam. 288 ; *Stehley* v. *Irvin*, 8 Pa. St. 500. The damages are to be measured by ascertaining what proportion the value of the part from which the grantee is evicted bears to the entire purchase-price.

A judgment, perpetually enjoining the grantee from using an easement which his grantor assumed to convey to him, may be treated as an eviction. The judgment rendered against appellee's grantor in an action pending at the time of the sale operated as an eviction by virtue of a paramount title. Such a judgment is self-executing, and needs no act of a ministerial officer to make it effective.

The description in the deed gives the section, town, range and number of acres, and then proceeds : "And known as the

Marietta Mill property, together with the mill-race and dam, and all the ways, appurtenances and privileges to said property belonging, and the fixtures, tools and machinery pertaining thereto." It can not be determined from this description alone what was the exact character of the property conveyed, and it was proper to read the deed by the light of surrounding circumstances. The office of a description is not to identify the land conveyed, but to furnish the means of identification. *Rucker* v. *Steelman*, 73 Ind. 396, auth. p. 407. The height of the dam was not fixed by the deed, and it was proper to look to extraneous evidence for the purpose of determining what was the character of the dam which the one party contracted for and the other assumed to convey.

The court, in its fifth instruction, told the jury that oral stipulations could not be incorporated in the deed, but that it might be shown by parol evidence at what height the dam was being maintained when the deed was made, and that the right to so maintain it was what the plaintiff warranted by his deed. This instruction meets our full approval. It was said in *Dawson* v. *James*, 64 Ind. 162, that " The descriptive part of a deed is to be construed with reference to the actual state of the property conveyed by it at the time of its execution, and the parties are supposed to refer to this for a definition of the terms made use of in the deed." Courts and text-writers agree on this point. Angell Watercourses, section 148; 2 Washb. Real Prop. 331; *Deshon* v. *Porter*, 38 Me. 289; *Sumner* v. *Williams*, 8 Mass. 162; Washb. Easements, 49. It was proper to permit proof to be made of the condition of the dam at the time the deed was executed, and to give evidence of the statements of the grantor as to its condition.

The rule prohibiting the contradiction of written instruments by oral evidence is not invaded by permitting testimony of the declarations of the grantor as to the character and condition of the property in cases where there is a mere general description of the real estate which the grantor assumes to

convey. Where there is a general designation of the property intended to be conveyed, it is competent to show by parol what property the description covers. Whart. Ev., section 943. If, however, there is a precise and particular description of the property, parol evidence is inadmissible. It is obvious that a deed conveying a mill and appurtenances would be almost meaningless in cases where there is a mere general description, unless parol evidence was admitted for the purpose of applying the deed to the subject-matter.

It is a familiar rule that parol evidence is competent for the purpose of applying a contract to its subject-matter, and within this rule fall cases where a mill and appurtenances are conveyed by a general description. Angell Watercourses, sec. 364.

Fraudulent representations as to the character of property conveyed, relied upon by the purchaser and resulting in damage to him, will constitute a defence to the action for the purchase-money. If the appellant fraudulently represented to the appellee that he had a right to maintain the dam at a height of 7½ feet, when in fact he had a right to maintain it at only 4½ feet, and the appellee suffered injury from the fraud, he was entitled to recoup his damages against the notes sued on. The court directed the jury that, in order to establish the defence of fraud, " it must appear that the alleged representations were made by the plaintiff; that they were false, and that the defendant relied upon them as true, and was thereby induced to enter into the contract." On motion of appellant the court also instructed the jury that " it is not sufficient to prove that fraudulent representations were made by the plaintiff, upon which the defendant relied. The law required diligence on the part of the defendant, and if you find as to such fraudulent representations, if proven, that the defendant had the opportunity of ascertaining, by the exercise of ordinary diligence, the truth or falsity of such representations, it was his duty to do so, and the law will not relieve him from the result of his own negligence." It is very clear that the rule

upon the subject of fraudulent representations was given to the jury quite as favorably to the appellant as the authorities warrant.

The court did not err in instructing the jury that if the appellee in good faith conformed to the judgment of the court requiring the dam to be cut down, he was entitled to maintain an action without proof of the enforcement of the judgment by a ministerial officer. The judgment against his grantor, rendered in an action instituted prior to the purchase, bound him and fixed the right to maintain the dam, and appellee had, as we have seen, a right to treat the judgment as working an eviction from part of the property. Where there is such an eviction, the purchaser is not bound to rescind the contract and reconvey, but may hold so much of the property as the deed conveys, and recover damages for the partial failure of title.

The instructions asked by the appellant are in the record, but all of the instructions given by the court are not, and in this state of the record we can not examine the ruling refusing instructions. It is a well settled rule of practice that no question can be presented upon the refusal to give instructions, unless all the instructions given by the court are brought into the record.

Where the court frames and submits interrogatories fully covering all the material matters of fact, there is no error in refusing to submit to the jury those asked by the parties.

New trials are seldom granted a plaintiff on the ground of surprise, for he may, if the evidence surprises him, procure a continuance or dismiss. In the present instance there is not shown such surprise as entitles appellant to a new trial. The verdict is right on the evidence.

Judgment affirmed.