FRANK G. WILLARD v. JOHN M. OSTRANDER.

1. PETITION IN ERROR — *Stay Bond — Effect on Judgment.* The filing of a petition in error in this court, and the execution and filing of a stay bond, while they stay execution of the judgment sought to be reversed, do not destroy or suspend the effect of the judgment as evidence, nor as a determination of the rights of the parties, while the case is pending in this court.

2. CONVERSION — *Evidence — Instruction — Error.* In an action charging the defendant with the unlawful taking and conversion of a flock of sheep, where the defendant justifies the taking under a claim of right to do so, based on a chattel mortgage given by the plaintiff to him, which mortgage the plaintiff charges the defendant with having altered in a material part after its execution, it is error for the trial court to submit, as an important and material question in the case, the issue as to the alteration of such mortgage, when no evidence whatever tending to show such alteration by the defendant, or by his agent, has been introduced.

*Error from Rice District Court.*

ACTION by *Ostrander* against *Willard* for conversion. Judgment for plaintiff. Defendant comes to this court. The facts fully appear in the opinion.

*Bailey & Foley,* and *J. Warner Mills,* for plaintiff in error:

The fifth count of the plaintiff's petition fails to state a cause of action against Willard for breach of warranty, be-

cause it nowhere alleges that Weeks was agent with power to sell, or that, having power to sell, he was authorized to give a warranty. But beyond all this, the fatal defect in said count is in the fact that payment or liquidation of the notes held by Willard, secured by the chattel mortgage, is nowhere alleged. Whatever equitable rights Ostrander might have had on account of the alleged partial failure of the consideration, he would only have been enabled thereby to have enjoined Willard from taking the sheep under his mortgage. But we do not admit that he could even have done this. It is certain, however, that in an action at law Ostrander could not, by merely setting up a counterclaim for unliquidated damages, and without paying the notes, prevent Willard from taking the sheep under the terms of the mortgage. Our answer alleges that when Willard took the sheep, on the 4th day of March, 1888, $2,300 was due and unpaid on the said notes, and that the sheep had been removed from Trego county to Rice county. This count does not deny that the sheep were so removed, nor does it allege that the said $2,300, or any part of it, was paid on the 14th day of March, 1888, but it merely says that Ostrander has some kind of a shadowy claim against Willard for unliquidated damages in the sum of $2,450. We, therefore, submit that our general demurrer to this fifth count of the reply should have been sustained.

The sixth count of the reply assumes to set forth the pendency of this suit between Willard and Ostrander in the district court of Trego county, Kansas, in which the above-mentioned counterclaim of Ostrander was set forth. It is unnecessary to examine this count in detail, as the reasoning we have applied above applies equally here. The pendency of said suit was no payment of the notes, nor was it a denial of the removal of the sheep from Trego county.

What purports to be the supplemental reply attempts to set out the adjudication as the result of said suit in the district court of Trego county. There is no allegation that the judgment entered therein is still in force or unappealed from, nor is the adjudication in the said action set out with any of

the particularity required in pleas of *res adjudicata*. The judgment set out as an exhibit shows on its face that it is uncertain and invalid in this, that it does not follow the verdict. But supposing that this judgment were pleaded with all the requisites that pertain to a plea of the kind: the fact remains that it merely gives the result of a trial that occurred months after March 14, 1888, when Willard took the sheep in question. It could not operate by relation, and make wrong, months afterward, on the part of Willard, what was right for him to do at the time. Such *ex post facto* operation of the alleged judgment would overturn all the principles of law and practice, and destroy equity itself. The act of Willard in taking the sheep, on the 14th of March, 1888, was either right or wrong then, irrespective of what might be the condition of a suit between him and Ostrander months afterward. It was wrong if both his notes were paid on the said 14th of March, 1888, but it was right if both or either one of them or any part thereof remained due and unpaid on the said date and the sheep had been removed from Trego county. This supplemental reply does not, in any wise, show that on the day last mentioned either note was paid or was not due or the sheep not removed from Trego county. The matters it contains are, therefore, wholly irrelevant and immaterial. Moreover, the supplemental reply refers to but one of the notes mentioned in our answer, and not to both, nor does it say anything about what has been done with the other note, nor plead payment as to it, or, for that matter, as to either of them. We conclude this branch of the case by submitting that the court below erred in sustaining the sufficiency of the fifth and sixth counts, and the so-called supplemental reply, over our timely and repeated objections, and likewise in receiving over our objection the transcript of the case between Willard and Ostrander in the district court of Trego county; and the court also erred in giving all the instructions hereinafter set out in relation to the fifth and sixth counts, and the

supplemental reply, and the matters therein respectively contained.

In the eighth instruction the jury are told this insertion of the word "wool," if made, was a material change, and, if made by Willard or by his direction or authority, invalidated the mortgage. And the validity of the mortgage is carried as an open question into other instructions. We maintain that there was and is not a *scintilla* of evidence to which these instructions could apply. The reply of Ostrander alleged that Weeks, as agent, made the sale, and not Willard. The testimony shows, without any variance, that Willard was in Colorado, and had nothing to do personally with the sale of the sheep; that the bill of sale was given by Weeks, and the mortgage in question was delivered to Weeks and put on record. There was not a particle of evidence to show that Weeks ever changed the mortgage, and, if he he did, no effort was made to charge Willard with notice of it. Weeks's deposition was on file, and we offered it in evidence to show that he made no change whatsoever in the mortgage after it came into his hands. The court ruled this out, which we submit, if the question was to go to the jury at all, was palpable error.

*Jno. E. Hessin, Sam. Jones,* and *A. M. Lasley,* for defendant in error:

The filing of a *supersedeas* bond had no effect whatever upon the judgment filed in the district court of Trego county. Its only effect was to stay execution. Gen. Stat. of 1889, ¶ 4652. So long as a case remains unreversed, its conclusiveness is not affected by an appeal or writ of error, and in the meantime it may be pleaded and produced in evidence as if final. *Sage v. Harpending,* 49 Barb. 66; *Burton v. Burton,* 28 Ind. 342; *Paine v. Schenectady Ins. Co.* 11 R. I. 411; *Cloud v. Wiley,* 29 Ark. 290; *Norton v. Graham,* 7 Kas. 166. See, also, Freem. Judg., § 328; *Thompson v. Griffin,* 69 Tex. 139; *The State v. Romberg,* 43 Md. 325; *Notion v. Johnston,* 24 How. 195;

*Gunn v. Plant*, 94 U. S. 668; *Cooper v. Reynolds*, 10 Wall.
316; *Haygood v. Macconn*, 49 Mo. 79; 52 Am. Dec. 290;
*Moore v. Ware*, 51 Miss. 206; 27 Fed. Rep. 277.

The jury, under the instructions of the court and this testi-
mony [of Willard], found the issues with the plaintiff, and
decided that there had been an alteration of this mortgage,
and that the same had been adjudicated in a former action.
The question of the material alteration of this mortgage was
an open one, and was rightfully carried as an open question
by the court to the jury. We do not concede that a mortgage
upon sheep carries the wool unless it is expressly named in the
mortgage, no more than we would concede that a chattel mort-
gage upon a milch cow included the milk which the cow gave.
It can be argued with a good deal of force that, inasmuch as
the wool was on the sheep at the time the mortgage was given,
and as the wool was a part of the sheep, it was included in the
mortgage; but it was also well understood by the parties at
the time of the execution of the mortgage that wool was a
crop which must be removed once a year, at least, and, in the
nature of things, must have been shorn from the sheep before
the maturity of this indebtedness. Therefore, in the light of
the circumstances, coupled with the testimony of the witnesses
and the finding of the jury, there can be no doubt that the al-
teration, if there was one, was material. The finding of the
jury establishes the fact that there was an alteration.

The opinion of the court was delivered by

ALLEN, J.: This action was brought by the defendant in
error, as plaintiff below, to recover the value of 1,500 Merino
sheep which he alleges he owned, and the defendant took and
converted to his own use. The defendant admitted the taking
of the sheep, but justified the act as having been done by vir-
tue of a chattel mortgage given by the plaintiff to him on the
2d day of September, 1885, on the sheep in controversy, to
secure the sum of $3,850.50, according to the terms of four
promissory notes. To this answer the plaintiff replied, deny-
ing the execution of the mortgage as set out in defendant's

answer, but admitting that he executed a chattel mortgage on the same sheep, and alleging that a material change had been made therein by the defendant, without the consent of the plaintiff, by inserting the word "wool"; also alleging that the sheep mortgaged were purchased from the defendant, and the mortgage given to secure the purchase price; that said sheep were warranted to be sound and healthy and free from disease; that they were in fact diseased, having a contagious disease commonly known as "mange," "scab," or "itch"; that various damages had been sustained by the plaintiff by reason of such disease; that the consideration of such notes had failed. The reply also alleged that an action was then pending in the district court of Trego county between the same parties on one of said notes which had been sued on by the defendant in this case in that county, and that the matters in controversy in this action were also in controversy in that.

This action was commenced on March 15, 1888. On December 18 of that year the plaintiff filed a supplemental reply, alleging that, after the filing of his former reply, the Trego county case had been determined by a verdict of a jury and judgment thereon in favor of Ostrander against Willard for $2,191.66, less the amount of said note, and claiming such former adjudication as a bar to defendant's claim under the chattel mortgage.

The assignments of error are multitudinous. Two principal questions, however, are discussed in the briefs and on the oral argument of the case, which we will proceed to consider. On the trial, copies of the pleadings and judgment in the Trego county case were received in evidence. The defendant offered in evidence a *supersedeas* bond filed in that case, and offered to show that an appeal had been taken in that case to this court, and was here pending undetermined. The court refused to receive the bond in evidence, and held that the judgment was in full force as an adjudication of the rights of the parties therein determined, notwithstanding the proceedings in error in this court and the filing of a *supersedeas* bond. One of the important questions we are called on to

decide is as to the correctness of this ruling. The effect of appeals and proceedings in error, where the execution of the judgment is stayed, upon the judgment, as evidence in another action between the same parties, has been frequently considered by the courts, and the decisions are by no means harmonious. In Freeman on Judgments, § 328, the author says:

"When an appeal is taken from a judgment, it is evident that the appellant cannot have the full benefit of his appea if, during the time necessary to procure a decision in the appellate court, the judgment may be used against him to the same extent as if no appeal had been taken. The mere issuing and enforcement of the execution may be stayed by the giving of an appropriate bond, but there is no provision in the statutes whereby the force of a judgment as evidence, or as an estoppel, may be avoided by the giving of any bond or other security. In perhaps a majority of the states the perfecting of an appeal suspends the operation of a judgment as an estoppel, and renders it no longer admissible as evidence in any controversy between the parties. The chief objection to this line of decisions is, that it enables one against whom a judgment is entered to avoid its force for a considerable period of time merely by taking an appeal. During that time he may carry on other controversies with the same parties, involving the same issues, and obtain decisions contrary to that from which the appeal was taken, and which could not have been obtained had the former judgment been admissible as evidence against him; and when it is finally determined that such judgment was free from error, there may be no mode of retrieving the loss resulting from its suspension by the appeal. Probably, this consideration has been the most potent in procuring the numerous decisions maintaining that the effect of an appeal, with proper bond to stay proceedings, is merely that it suspends the right to execution, but leaves the judgment, until annulled or reversed, binding upon the parties as to every question directly decided. The evil resulting from this rule is, that though the judgment is erroneous, and for that reason is reversed, yet before the reversal it may be used as evidence, and thereby lead to another judgment, which cannot in turn be reversed, because the action of the trial court in receiving and giving effect to the

former judgment was correct, and does not become erroneous when such judgment is subsequently reversed."

This case strongly illustrates the hardship in the case last mentioned by the author, as the judgment in the Trego county case was reversed by this court. (*Willard v. Ostrander*, 46 Kas. 591.) Yet if it was rightfully admitted in evidence, and if the proceedings in error did not stay its force as an estoppel, it affords no ground for a reversal of the judgment in this case. Viewed from either side, the question is not without difficulty. Numerous authorities maintain the doctrine that the whole effect of the judgment is stayed. (See *Burton v. Burton*, 28 Ind. 342; *Paine v. Insurance Co.*, 11 R. I. 411; *Cloud v. Wiley*, 29 Ark. 80; *Sage v. Harpending*, 49 Barb. 166; *Souter v. Baymore*, 7 Pa. St. 415; *The State v. McIntire*, 1 Jones, 1; 59 Am. Dec. 566; *Sharon v. Hill*, 29 Fed. Rep. 337; *De Camp v. Miller*, 44 N. J. L. 617; *Atkins v. Wyman*, 45 Me. 399; *Day v. DeJonge*, 66 Mich. 550.) In order to understand the force of each of the cases bearing on this question, it is necessary to know the statutory provisions of the states where rendered, as to the effect of appeals and proceedings in error. It is also necessary to discriminate between appeals at law and in equity under the old chancery practice, where, generally speaking, the trial was *de novo* and final judgment rendered, or directed by the appellate court. Most of the above cases appear to be either suits in equity or appeals taken under some statute which provides that the taking of an appeal shall have the effect to vacate the judgment, or that the trial in the appellate court shall be *de novo*.

On the other side of the question are the following cases: *Nill v. Comparet*, 16 Ind. 107; 79 Am. Dec. 411; *Scheible v. Slagle*, 89 Ind. 328; *Tadgett v. The State*, 93 id. 397; *Faber v. Hovey*, 117 Mass. 107; *Thompson v. Griffin*, 69 Tex. 139; *Moore v. Williams*, 132 Ill. 589. In the latter case, the third paragraph of the syllabus reads as follows: "An appeal from a decree does not destroy its operation as a former adjudication. It does not vacate the decree, but simply suspends its execution.

It leaves the decree in full force as a merger of the cause of action and a bar to further litigation." In *Parkhurst v. Burdell*, 110 N. Y. 386, it was held, that a reversal of a judgment after it has been received as evidence in another action cannot bear retrospectively so as to render its reception erroneous. The fact of " reversal cannot appear by the record in the second action, and the only remedy of the injured party, if any he have, is by motion for a new trial." (See, also, *Bank of North America v. Wheeler*, 28 Conn. 433; *Planters' Bank v. Calvit*, 3 S. & M. 143.) While the attention of this court has never been directed to the precise question we are now considering, the conclusive force of a former adjudication has often been recognized, and in some of the cases language has been used broad enough to cover the question in this. (See *Norton v. Graham*, 7 Kas. 166; *Challiss v. City of Atchison*, 45 id. 22; *Railroad Co. v. Comm'rs of Anderson Co.*, 47 id. 766; *Bank of Santa Fé v. Haskell County Bank*, ante, p. 50.)

It is provided by statute that, on an appeal from a judgment of a justice of the peace, a trial *de novo* shall be had in the district court. There is no question in such a case that the filing of the appeal bond has the effect to vacate the judgment; but where proceedings in error are prosecuted in this court there is no provision in the statutes authorizing a vacation of the judgment pending the proceedings here. The language of the code is, that "execution on the judgment may be stayed." A proceeding in error does not have even this effect unless a proper bond is filed. The statute provides that this court may reverse, vacate or modify a judgment of the district court, for errors appearing on the record. We are unable to find any language used by the legislature which seems to us to imply that a stay of execution has any other force or effect on the judgment than simply to prevent its enforcement by execution. On the contrary, as a determination of the rights of the parties, it remains in full force pending the proceedings here. It is apparent that this construction of the law may work great hardship in some cases. The trial

courts, however, have ample power, when it is apparent that injustice may be done, to grant continuances until a case pending in this court, sought to be used as a bar or estoppel, is determined; and it would seem to us, where an appeal to this court has been taken in good faith, and a sufficient bond to stay execution has been given, that if the introduction of a judgment in another case would have the effect, as in the case now before us, to permit the party holding the judgment, through the medium of another action, to collect that judgment, that the trial court should always, on the proper showing being made, continue the trial until after the case pending here is determined. Only in this way can full justice be done.

It was claimed by the plaintiff that the chattel mortgage given by him to the defendant was altered by the defendant, after its execution and delivery, in a material part, viz.: By inserting the word "wool" therein; that by reason of such alteration the mortgage was avoided. The court in its charge to the jury included the following:

"The plaintiff claims that the mortgage was materially changed without his consent after he executed it, by inserting therein the word 'wool'; and further, that there was nothing due this defendant upon the note sued on in Trego county in the case in which this defendant was plaintiff and this plaintiff was defendant, and that this defendant was not the owner of the note when the sheep were taken, and that for these reasons defendant had no right or authority under the mortgage to take the sheep; and these are material questions for the jury to determine in this case from the evidence introduced upon the trial, and I will instruct you further upon these matters."

"8. The jury are instructed that the validity of the mortgage when the sheep were taken by the defendant depends upon these two propositions: First. Did the defendant execute the mortgage? Second. Did any of the debt secured by the mortgage remain unpaid, or unsatisfied, or unextinguished? If the word 'wool' was inserted in the mortgage after it was executed by the plaintiff, and without his consent, it was a material change and alteration, and if it was so made by the defendant, or by his direction or authority, it would render

the mortgage void and of no effect; but if the word 'wool' was in the mortgage when it was executed by the plaintiff, or if he consented to its insertion therein at any time thereafter, or if it was inserted therein by any person besides the defend- ant, but without the direction or authority of the defendant, then the mortgage would not be void but would be good, al- though, if the plaintiff did not execute it with the word 'wool' in it, and did not give his consent to insert the word 'wool' in it, it would not be a good mortgage on the 'wool' after it had been clipped from the sheep."

From these instructions, it will be seen that the jury were told by the court that, under the evidence, it was an open question whether the mortgage had been materially altered by the defendant or not. The only testimony which could possibly be construed as proof of the alteration of the mort- gage by the defendant was a statement by the plaintiff, as follows: "I signed the chattel mortgage, but it was altered afterward." No statement whatever was made by the plain- tiff as to who made the alteration, or when it was made, but it is claimed by the plaintiff that the question was determined in his favor in the Trego county case. There appears in the record this statement, occurring after the offer by the defend- ant to read in evidence a portion of the deposition of Charles Weeks:

"Plaintiff wishes to state, and have it introduced in the record, that we do n't ask them to litigate that question, and do n't propose to offer any evidence on the question, any oral evidence on the question as to the execution of this mortgage with 'wool' inserted therein, for the reason it has been liti- gated between this plaintiff and defendant in this action in the district court of Trego county, Kansas, wherein Frank G. Willard was plaintiff and John M. Ostrander was defendant, and the same was found in favor of the defendant."

A certified copy of the record in that case was read in evi- dence. The answer of the defendant, it is true, alleged that a chattel mortgage had been executed by the defendant to the plaintiff to secure the note sued on in that action, and others, and that said chattel mortgage was altered in a material part by the plaintiff or his agent, as follows, to wit, the words

"and wool" were interlined between the words "their" and "increase;" and in conclusion the defendant in that case prayed that the plaintiff be ordered to bring each of said notes of $950 each into court for cancellation; second, that said chattel mortgage be declared fraudulent and void; and then followed prayers for damages. The jury rendered a verdict in favor of the defendant, assessing his damages at $2,191.66. No finding whatever was made, either by the court or jury, as to the alteration or validity of said mortgage, but the court rendered judgment as follows:

"It is therefore considered, ordered and adjudged by the court, that said defendant have and recover from the plaintiff herein the sum of $2,191.66 as his damages, also costs of suit, less $1,318.86, being the amount of the note and interest herein sued on."

There being no finding or judgment of the court upon the question of the alteration of the mortgage, and as the judgment was in no manner based on the mortgage, and no order whatever with reference to the security of the plaintiff thereunder was made by the court, we fail to see how the judgment in that action affords any evidence whatever in this, on the question of alteration of the mortgage. The evidence in this case shows that the defendant himself was not in possession of the mortgage until a long time after the word "wool" appeared therein, and the defendant's agent, Weeks, and his son, both swore positively that the word "wool" was inserted in the mortgage before its execution and delivery by Ostrander. There being no testimony to go to the jury on that point, the instructions were erroneous and misleading, if material.

It will be observed that the trial court treated this question not only as material, but as important. Was it really so? Willard justified the taking of the sheep under this mortgage, claiming that the balance of $2,300 secured thereby was still due him on two of the notes. The jury was instructed by the court that, if anything was due the defendant on either of the notes, he had a right to take possession of the sheep. It was claimed by the plaintiff, Ostrander, that the note not sued on

in Trego county had been sold by Willard to Ann C. Ostrander, and was not his property. Testimony was offered for the purpose of establishing that claim, and the jury were instructed in reference thereto. The thirteenth instruction is as follows:

"The jury are instructed that if it appears from the copy of the judgment rendered in Trego county, in the suit brought by this defendant against this plaintiff upon one of the notes in question, that the judgment was against this defendant for a sum over and above the amount of the note sued on, that judgment cuts no figure with reference to the other note that was not sued on in that action; and if this defendant was the owner of the other note when he took the sheep, and if the mortgage was valid upon the sheep taken, or any of them when taken, and if such other note had not been paid or satisfied, or extinguished in any way, before the sheep were taken by the defendant, and if the defendant took the sheep under said mortgage, such taking would not be wrongful as to such sheep as were covered by the mortgage, if this other note was not canceled, paid, satisfied, or the debt evidenced thereby extinguished by reason of that judgment, whatever effect it might have had upon the other note."

The record shows that the jury returned into court with the following verdict: "We, the jury impaneled and sworn in the above-entitled case, do, upon our oaths, find for the plaintiff in the sum of $2,800, less the Ann C. Ostrander note, with interest thereon." This verdict the court refused to accept, and sent the jury out again. They then returned a second verdict, as follows: "We, the jury impaneled and sworn in the above-entitled cause, do, upon our oaths, find for the plaintiff in the sum of $1,790.60." There really seems to have been no substantial conflict as to defendant's ownership of both notes, and the jury by their first verdict found in effect that Willard owned the Ann C. Ostrander note. If so, under the instructions of the court, the jury should have found for the defendant, unless they found that the mortgage had been altered in a material part by the de-

2. Conversion — evidence — instructions — error.

fendant or under his direction, after its execution. If the jury were guided in their deliberations by the instructions of the court, as it was their duty to be, they then must have found that the mortgage was in fact so altered, and this finding is wholly unsupported and contradicted by the evidence.

Much is said in the briefs, and the point was vigorously pressed on the oral arguments, as to the materiality of the word "wool" in the mortgage. Plaintiff in error contends that a mortgage of the sheep necessarily covers their wool. The question is not free from difficulty. (See Jones, Ch. Mort., §§ 149–151, and cases therein cited; *Bryant v. Pennell*, 61 Me. 108.) Without attempting to carefully review all the authorities, we think, as between the parties to the action, a mortgage on the sheep would include the "wool," but that, after the "wool" was clipped, if sold to a purchaser for value without notice, he would get a title free from the lien of the mortgage. If this conclusion be correct, the insertion of the word "wool" would be a material alteration. If the mortgage was in fact altered after its execution, the alteration must have been made by the mortgagee, or by his direction, to impair its validity; and it will not be presumed that an agent entrusted with the possession of the security was directed by the mortgagee to make such an alteration, but that fact must be shown by proof. (*Langenberger v. Kroeger*, 48 Cal. 147; 17 Am. Rep. 418.) Some other questions are urged on our consideration, but as they are not likely to arise on another trial, we do not feel called on to specially mention them.

For the errors of the court in instructing the jury, the judgment must be reversed, and a new trial ordered.

HORTON, C. J., concurring: While proceedings in error, supplemented with a *supersedeas* bond, only "stay the execution of the judgment," and while the trial courts in other subsequent actions may, to prevent injustice being done in the use of an alleged erroneous judgment as evidence, or as

an estoppel, continue from time to time the hearing of such an action until proceedings pending to reverse such a judgment are disposed of, the supreme court also has the inherent power, for the protection of its own jurisdiction, and for the enforcement and protection of its own orders and judgments, to prohibit and restrain, upon proper terms, the parties in any proceeding pending in this court from using a judgment brought here for review as evidence, or as a bar or estoppel, in any other case pending in this or any other court, so long as the proceedings to review the alleged erroneous judgment remain undisposed of. (*Railroad Co. v. Comm'rs of Chase Co.*, 42 Kas. 223.)

JOHNSTON, J., concurring: I concur in what has been said in the principal opinion, and, as an additional authority sustaining the position that the filing of a petition in error and of the ordinary stay bond goes no further than to stay the execution of the judgment, I cite *Railroad Co. v. Andrews*, 34 Kas. 563, where it was expressly held that

"The institution of a proceeding in error in the supreme court does not of itself operate to suspend further proceedings in the case in the court below; nor will the giving of the undertaking provided for in §§ 551 and 552 of the code suspend proceedings in the district court further than to stay execution of the judgment or final order sought to be reviewed."

I also fully concur with the chief justice, that this court has ample power, when necessary, to stay and suspend the effect and use of the judgment for any purpose during the pendency of a proceeding brought for a reversal of such judgment.