# Fletcher *vs* Dysart, &c.; Arnold *vs* Same; Same *vs* Same; Sanders *vs* Same; Stewart *vs* Same.

### APPEAL FROM THE LINCOLN CIRCUIT.

### *Non est factum.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

IN 1841, Fletcher, Arnold, Sanders and Stewart, brought five separate actions upon notes purporting to be executed by David B. Proctor, James Dysart, John B. Dysart and James Proctor. In each of these actions, the two last named defendants, John B. Dysart and Jas. Proctor, filed separate pleas of *non est factum*, on which issues were taken. During the pendency of these suits, in June, 1844, each of the plaintiffs filed his bill to attach slaves and other property as belonging to John B. Dysart and James Proctor respectively, on the ground of actual or intended fraudulent disposition or removal of the property, and praying that it might be subjected to their several debts, on which they expected to obtain judgments. These bills were answered by John B. Dysart and James Proctor, by a denial of the fraud, and also by the plea of *non est factum*. Other answers were also filed.

In this state of the record, five cases in chancery were consolidated; and the complainants united in a joint amended bill, setting out more specifically the fraud relied on. John B. Dysart, and the claimants of the property attached as his, answered specifically these specifications, and again relied on the plea of *non est factum*. But no further answer was filed by James Proctor.

FLETCHER
vs
DYSART, &c.

The actions at law upon the notes, proceeded to trial at the —— term, 1845. And while the jury were out considering of their verdict, the pleas were withdrawn, and judgment allowed to go in each case for the plaintiff, with the agreement that the defendants should have the right to litigate in equity the matters involved in the pleas of *non est factum ;* but the plaintiffs were not to be stayed in the execution of their judgments, unless injunctions should be obtained.

*Decisions of the Circuit Court.*

On the hearing of the consolidated chancery suits, the Court was of opinion that the testimony was insufficient to make John B. Dysart and James Proctor liable as co-obligors in any of the notes; and being also of opinion that there was no fraud in the transactions referred to, discharged the attachments and decreed a perpetual injunction against the enforcement of the judgment, so far as John B. Dysart and James Proctor were concerned.

*The jury had retired to try the issue upon the plea of non est factum—the parties agree that verdict may be rendered for the plaintiff, but the issue of non est factum to be tried by the court in a chancery cause between the same parties—Held that the trial be uninfluenced by the verdict of the jury.*

In the view which we have taken of the cases, two principal questions are involved in the objections to the decree:—First, as to the effect of the agreement under which the pleas were withdrawn in the common law cases, and the attitude afterwards occupied by the parties with respect to the proof of the issues made in the chancery suits. And second, whether upon that proof the issue of *non est factum* should be determined in favor of the complainants or of the defendants.

1. It is contended that judgments having gone for the plaintiffs on the contested notes, these judgments are *prima facie* evidence of the validity and genuineness of the notes, and therefore that the burthen of proof devolves upon the defendants, who deny their validity. But we are of opinion, that under the agreement, the judgment cannot have this effect. The same issues were in fact pending in both forums. And at the very moment of trial in one, it is agreed that the issue shall be withdrawn in that forum, and may be tried in the other. This, of course, entitled the plaintiffs to their judgments at law, which it was agreed they might enforce, unless restrained by injunction from the Chancellor. But the question itself, whether the notes were ob-

ligatory, and whether the plaintiffs were entitled to the benefit of their judgments, was reserved to be litigated in equity. It would be a perversion of the agreement to the unfair advantage of one of the parties, to make the judgment obtained under this reservation, evidence in the Court of equity upon the reserved question. That question is, we think, to be tried in this case just as it would have been if the parties had agreed before judgment, that the issue of *non est factum* should be decided in the chancery suits, and that so far as these defendants are concerned, the judgments in the actions at law, should depend upon that decision.

2. The complainants, who were the plaintiffs at law, have, however, attempted to prove circumstantially, that the notes are obligatory; and upon their own proof, exclusive of any offered by the defendants, we are of opinion with the Circuit Court, that the testimony is insufficient to establish the conclusion that the notes are obligatory upon the contesting defendants. We do not say that there is no evidence conducing to that conclusion, and on which a jury might find for the complainants. But we are of opinion that a contrary verdict would be more consonant with all the considerations and inferences fairly arising upon the facts proved.

The notes were not executed by the contesting defendants in person. There is no direct proof of any previous authority from them, or either of them, to execute the notes in their names. The fact that they had with the two other obligors (their respective sons) executed a note for a much larger amount, payable to one Beasley, and intended to be used by the two young men in the purchase of a large number of hogs from Beasley, if it may tend to prove that they would have executed or authorized the execution of smaller notes as sureties for their sons, to be used in the purchase of smaller parcels of hogs from different persons on the failure of the purchase from Beasley, neither conferred such authority in itself, nor tended to prove that it had been conferred; and has but a very slight tendency to prove that on authority in its nature intimated, would have been conferred. On the contrary, the fact that

Where a recognition of one purporting to have signed a note, which he did not sign, is relied upon to bind the party, it should appear that it was recognized with the intention of thereby making it his note, and with a knowledge of the fact that without such recognition he would not be bound. But if made under a mistaken apprehension of liability, it is not binding.

they had executed this note to Beasley themselves, might furnish some ground for inferring, that they intended to reserve in their own hands the power of binding themselves as sureties for their sons.

The subsequent recognitions of the notes, whether relied on as proving a previous authority or as equivalent to it, are either too vague to be referred with certainty to the notes now in question, (for others of a similar character were executed under the same circumstances by their sons,) or may be referred to the supposition that they were liable by virtue of the note executed by them for the Beasley purchase, the amount of which was left in blank. In the case of *Hyatt* vs *Dyrant*, &c., Ms. opinion, June 1845, arising upon one of the notes executed by the sons as these are, this Court decided " that if the note was not executed with their assent, then, in order to render the note their note, (that is, the defendants now contesting the claims) it must have been recognized by them with the intention of thereby making it their note, and with a knowledge of the fact that without such recognition they would not be responsible. But that, if the recognition were made under a mistaken apprehension as to their liability, either as to the fact or the law, then such recognition would not be obligatory upon them, and the note would not thereby become their note."

Testing the evidence in this case by these principles, we are of opinion that it does not establish such recognition as they require. The recognitions relied on, are indeed, some of them, of a negative character, or rather mere inferences, from the failure to deny responsibility. Some of the declarations proved may be referred to an ignorance of the change which had been made, or attempted to be made, in the evidence of their liability—and such as were made with reference to such change do not appear to have been made with a knowledge of the facts affecting their responsibility, or with the intention to make themselves responsible. And although they may afford some ground for the inference of previous authority or consent, they are equally referable to a natural disinclination on the part of parents to re-

pudiate at once and in the absence of their sons, acts done by both under circumstances of which their fathers were not fully apprised. And especially when they expected the sons to return with the proceeds of the hogs sufficient to pay off all the purchases. Under these circumstances, the willingness in a particular case (not the present) of Dysart to join in a new note with Proctor, who, however, does not appear to have consented, for one of the debts thus created—the statement that the notes were just and would be paid when the boys came home, &c., do not amount to a recognition or ratification which should make the notes obligatory. There is no evidence that either of the contesting defendants were apprised, until some time after the departure of the sons with the drove of hogs for the southern market, that they had not purchased from Beasley, or that they had executed other notes in their names. And the statement of Proctor made within a few days after their departure, implying that he had assisted the boys, may be referred to the supposed purchase from Beasley.

There being, in our opinion, no sufficient evidence of a previous authority or of a subsequent recognition which could make the notes binding, it only remains to say, that upon the record as it stands, the Court had a right to enjoin the coercion of the judgments against the two contesting defendants upon deciding the issue of *non est factum* in their favor. And the decree being correct upon this point, is therefore affirmed in each of the five cases.

*Turner and Burton* for appellant; *J. & W. L. Harlan and Callender* for appellees.