First National Bank of Trenton v. Gay, et als.

————o————o

FIRST NATIONAL BANK OF TRENTON, Mo., Respondent, *vs.* SAMUEL GAY, ROBERT L. GILLILAN AND NATHAN GILLILAN, Appellants.

1. *Promissory note—Instrument uncertain as to amount, not.*—An instrument whereby the maker promises to pay a specified sum, and agrees, if the sum be not paid at maturity, and the note is placed in the hands of an attorney for collection, to pay ten per cent. in addition, as an attorney's fee, is not a promissory note, forasmuch as a part of the amount agreed to be paid is uncertain and contingent.

2. *Promissory notes—Agency—Authority to make note.*—Where one authorizes another "to use or sign his name" for the purpose of obtaining accommodation at a bank, he of necessity authorizes the execution of a note, and the law will give effect to such purpose in the usual and ordinary way. But such power does not authorize the execution of an instrument which is not a commercial note (as in the instance above supposed).

3—VOL. LXIII.

63 33
43a 635
43a 637

63 33
44a 134
63 33
112 340
63 33
57a 67
58a 672
63 33
129 231
63 33
134 65
67a 154
63 33
139 77
63 33
141 661
63 33
80a 388
80a 389
63 33
87a 371
63 33
88a 458
63 33
167 425
63 33
93a 1135

3. *Agency—Authority to sign note—Signature of co-security obtained without authority of principal—Ratification.*—Where one authorized his name to be signed or used, but refused to go out of his family for the purpose of obtaining co-securities, and the person who signed the name of the one so authorizing, did so in conjunction with another who was not in the family, *held*, that the person who authorized his name to be used was not liable in consequence of the departure of the restrictions imposed. But such signing may be made good by subsequent ratification, with full knowledge, etc. And in such case no new consideration is requisite.

4. *Promise—Ratification of refers to, etc.*—When the ratification of a promissory note occurs it has relation to the original promise, and becomes part and parcel thereof. But full knowledge must be brought home to the party ratifying, and evidence of such knowledge should be clear.

5. *Agency—Authority to sign note need not appear on face of.*—The authority of an agent need not appear on face of instrument not under seal, although that is the best method of execution. The simple signature of principal's name is sufficient.

*Appeal from Daviess County Court.*

*Shanklin, Low & McDougal,* for Appellants.

I. The instrument sued on is not a promissory note, and was inadmissible under the pleadings. The stipulation for the payment of an attorney's fee reduced it to an ordinary contract. (Ancil vs. Brooks, 51 Mo., 178 ; Comstock vs. Davis, 51 Mo., 569 ; Lowe vs. Bliss, 24 Ill. 168 ; Read vs. McNulty, 12 Rich. [Law] 445 ; Philadelphia Bank vs. Newkerk, 2 Miles, 442 ; Ayrey vs. Fearnsides, 4 M. & W., 168 ; Palmer vs. Fahnestock, 9 Upper Can. C. P., 172 ; Austin vs. Barnes, 16 Barb., 643 ; 1 Pars. N. & B., 37–8 ; Sto. Prom. Notes, § 20 ; Edwds. Bills and Notes, §§ 138, 139.)

II. The evidence of James B. Carnes was insufficient to establish a ratification of the note, for it is not shown that Nathan promised to pay this note, nor that his remarks were made with full knowledge of all the facts. (1 Pars. N. & B., 101 ; Nixon vs. Palmer, 8 N. Y. 398 ; Fletcher vs. Dysart, 9 B. Mon., 413 ; Whitford vs. Monroe, 17 Md., 135 ; Norton vs. Ball, 43 Mo., 113 ; Moore vs. Patterson, 28 Penn. St., 505 ; Clark vs. Lyon Co., 7 Nevada, 76 ; Sto. Agen., §§ 243, 324 ; Ferry vs. Taylor, 33 Mo., 334 ; Brook vs. Hook, L. R. 6 Exch., 88 ; Wilson vs.

Tumman, 6 Man. & Gr., 236; Watson vs. Swan, 11 C. B. N. S., 756; Lancaster vs. Baltzell, 7 Gil. & J., 472; Collins vs. Swan, 7 Robt. [N. Y.] 623; Fellows vs. Commissioners, 36 Barb., 665.)

*Daniel Metcalf*, for Respondent.

I. The fact that Robert Gillilan executed the note with Samuel Gay, does not make the note less binding on Nathan Gillilan. When an agent does what he has authority to do, and also that which is in excess of his authority, his acts are good to the extent of his authority. (Bank of Mo. vs. McKnight, 2 Mo., 42; Sto. Agen. [6 Ed.], §§ 167-168, pp. 186, 197; 2 Sugd. Powers, 3d Ed. § 5, ch. 8, pp. 550, 556; Id. 6 ed., ch. 9, § 1, pp. 59, 79, vol. 2.)

II. The fact that Robert L. Gillilan, as the agent of Nathan Gillilan, signed the name of Nathan Gillilan without signing his own name as agent, makes no difference if he was Nathan's agent. It is a matter of proof *aliunde*. (1 Pars. Bills and Notes, § 4, p. 91; Trumbull vs. Brent, 1 Hill, 336.)

III. The allegations in the petition that the note was for value received, sold and endorsed to the respondent, is sufficient. (Whittelsey's Mo. Pr., 147, 148; Dumont vs. Williams, 18 Ohio St., 515.)

SHERWOOD, Judge, delivered the opinion of the court.

Action on instrument in this form:

"$650.00                    TRENTON, Mo., May 13, 1874.

Ninety days after date we promise to pay to the order of Robert L. Gillilan, six hundred and fifty dollars, for value received, with-interest after maturity, at the rate of ten per cent. per annum, at the First National Bank of Trenton, Mo.; and if not paid at maturity, and the same is placed in the hands of an attorney for collection, we agree and promise to pay an additional sum of ten per cent. as attorney's fee.

NATHAN GILLILAN.
SAMUEL GAY."

On the above instrument there was this indorsement : "For value received, I assign the within note to First National Bank of Trenton, Mo., and waive protest, notice of protest, and demand of payment.

Robert L. Gillilan."

The petition alleged, among other things, that in consequence of the non-payment of the instrument at maturity, it was placed in the hands of an attorney for collection, and asked judgment not only for the principal sum with interest, but also asked for four per cent. damages for non-payment, as well as ten per cent. damages as an attorney's fee.

In addition to other matters, the defendant, Nathan Gillilan, put in a plea of *non est factum*. A trial was had, resulting in a verdict for plaintiff and judgment accordingly.

These instructions, against the objection of the defendant, were given on behalf of the plaintiff :

1. "If the jury believe from the evidence that the defendant, Nathan Gillilan, authorized or directed Robert Gillilan to get money from plaintiff, and to sign or use his name on a note, or notes, therefor, and that said Robert did, in pursuance of such authority, borrow of plaintiff $624.80, and to secure the payment of the same, did make the instrument sued on, signing said Nathan's name thereto as a maker of said instrument, they must find for plaintiff against all of the defendants for that sum."

2. "If the jury believe from the evidence that defendant, Nathan Gillilan, authorized or directed Robert L. Gillilan to get money from plaintiff, and to sign or use his name therefor, and that said Robert did, in pursuance of such authority, borrow of plaintiff $624.80, and to secure the payment of the same, did make the instrument sued on, signing said Nathan's name thereto as a maker of said instrument, and that said instrument was within the scope and meaning of his authority to use said Nathan's name, then they must find for plaintiff against all the defendants for said sum and ten per cent. thereon, as attorneys' fees."

For the reason that the instrument in suit is not precise as to the amount to be paid, we do not regard it as a promissory note,

And no little stringency is exhibited by the cases in respect to this point. It is said that, "the sum must be stated definitely, and must not be connected with any indefinite or uncertain sum," and that the rule *id certum est*, etc. is not allowed to supply any lack in this particular. Thus, where the promise was to pay a certain sum and "all fines according to rule," it was held, that the words just quoted could not be rejected as surplusage, and that, consequently, the paper declared on was not a promissory note. (Ayrey vs. Fearnsides, 4 M. & W., 168.) Numerous other instances of like tenor and effect can be found in the books. (Smith vs. Nightingale, 2 Stark., 375 ; Bolton vs. Dugdale, 4 B. & Ad., 619 ; Smith Merc. Law, 253 ; Clarke vs. Perceval, 2 B. & Ad., 660 ; 1 Pars. N. & B., 37 ; Read vs. McNulty, 12 Rich. [Law], 445.)

Here, a portion of the amount promised to be paid, to-wit, the attorneys' fees, depends upon the contingency, whether another portion, specified by the same paper, is paid on maturity. There are, however, authorities which hold to a different view from the one here enunciated (Stoneman vs. Pyle, 35 Ind., 103 ; Nickerson vs. Sheldon, 33 Ill., 373 ; Sperry vs. Hoy, 32 Iowa, 184), but we regard them as seriously endangering elementary principles and definitions. If, then, our position be correct, that the instrument referred to is not a promissory note, the first instruction given at plaintiff's instance is clearly faulty, in assuming that if Robert Gillilan was authorized by Nathan Gillilan to sign his name to a note or notes, in order to borrow money, therefore this authority would comprehend and authorize the execution of such an instrument as the one declared on. If the father, when stating "that whenever his son wanted accommodation at the bank, he was authorized to use or sign his name," did not by such language intend to confer authority for signing his name to a note or notes as security, it is impossible to give any meaning or force to his utterances. He must have meant to confer such authority if he meant anything. And it will not be assumed that this language of the father was a mere idle declaration. The law, therefore, will give effect to such evident intention, in the

usual and ordinary manner in which such intention is commonly effectuated. The authorities abound in favor of this view. (Sto. Agency, §§ 57, 58, 59, 60, 84, 85, 102, 103 ; Ekins vs. Macklish, Ambler, 184.)

But while we may freely concede that all means necessary and proper for the accomplishment of the end were intended, yet this concession cannot be permitted to embrace the extraordinary means and measures resorted to by the son, in the present instance. These considerations conspicuously show the exceeding impropriety of giving the instruction above mentioned. The second instruction was equally erroneous as the first. The evidence of plaintiff's own witnesses, the officers of the bank, shows that the father, in proffering the use of his name, for the accommodation of the son, distinctly stated "that he and Robert were both good ; that he did not wish to go out of the family for security, that there was no necessity for doing so." This language is susceptible of but one construction. It plainly indicates that while the father was willing to become the surety of his son, he at the same time desired to restrict that suretyship to the members of his family. And he had the undoubted right to so restrict his liability. And, as a necessary sequence therefrom, the son had no power to disregard these restrictions which were imposed on him.

These remarks are but the application of a very familiar doctrine respecting agents who possess only special and limited powers. Thus, an agent authorized to draw and indorse bills in the name of his principal, has no power to draw or indorse a bill in his own name, or in the joint name of himself and principal. (Slainback vs. Read, 11 Gratt. 281.) A ruling similar to this in point of principle, was made in Mechanics' Bank vs. Schaumburg (38 Mo., 228). And it matters not whether the addition of the name of Samuel Gay to the note, prior to its delivery, affected the rights or interests of Nathan Gillilan injuriously or otherwise. He has the right to say, when ascertaining that his instructions have not been followed : "I never gave assent to this contract."

The instruction referred to was erroneous, therefore, as already stated, because there was not a particle of evidence tending to show that Nathan Gillilan was willing, at the outset, to assume with Samuel Gay, or indeed any one else, outside of his family, a joint liability in the execution of any paper whatever, much less the instrument in suit.    There are other errors in this instruction but we need not point them out, as they have been already passed upon in our remarks upon the first one given.    And the errors we have pointed out were not aided or cured by the harmless platitude which the court of its own motion gave, " That, unless the jury find from the evidence in the case that Nathan Gillilan authorized Robert L. Gillilan to sign his (Nathan Gillilan's) name to the instrument in suit, the jury must find for the said Nathan Gillilan."    But although it may be true that Nathan Gillilan did not give authority to sign his name to the instrument on which the claim of the plaintiff is based, yet it was doubtless in his power, upon full knowledge of what had been done, to give it the sanction of his approbation.

There have been many refinements adopted about this doctrine of ratification ; refinements which savor more of subtlety than of sound judgment.    With some exceptions, not necessary to be adverted to here, the general proposition is, however, undoubtedly correct, that *he who may authorize in the beginning, may ratify in the end*.    This is a common sense view of the matter, easily understood, constantly acted and relied on, in the ordinary occurrences of daily life, and should not be frittered away by subtleties without soundness, and distinctions without difference. And there is, therefore, no force in the point urged on our attention, that there would have to be a new consideration in order to attach validity to a confirmatory act.    No independent consideration is required in the case of an accommodation indorser, surety, etc., in the first instance, and it is difficult to see why anything more should be required on subsequent sanction than on original assent. (Commercial Bank vs. Warren, 15 N. Y. [1 Smith], 577, and cases cited.)

The Supreme Court of Pennsylvania (McHugh vs. County, 67 Pa., 391, and cases cited) has, it seems, uniformly held that there could be no ratification without a new consideration, where the original act was *mala fide*. But this court, in the case of Dow's Ex'r vs. Spurney's Ex'r (29 Mo., 386), where the point, indeed, was not expressly raised, but where there was no proof of a new consideration, held that ratification might occur, even where the ratifier's name had been *forged*. There is, however, no proof of bad faith in this case; so that the Pennsylvania decisions to which we have been cited, even if regarded as sound, would be inapplicable here.

As to the case of Green vs. Shepherd (5 Allen, 589), to which our attention is also called, it only decides that, if a note be signed by one as principal, after delivery and acceptance, without new consideration, there could be no recovery against the party so signing. The case of Good vs. Jones (9 Mo. 866), has no greater relevancy to the case at bar than the one from Massachusetts, for, in the present case, if the act of the son was ratified, the ratification would not be a collateral undertaking, as in the two cases just cited, but would evidently have relation to the date of the act ratified, take effect from that period, and be regarded as part and parcel of the original promise. But there is no inconsiderable doubt whether the evidence establishes a ratification. The testimony of Carnes, the president of the bank, can hardly be held sufficient for that purpose, especially when taken in connection with that of Nathan Gillilan. Carnes says, that on one occasion Nathan Gillilan walked with him to the depot and stated, "that they had received some notices of notes falling due at the bank, and requested me to tell the cashier that he or Robert L. would be over in a few days and fix them up." But at that time Gillilan had a note in bank, signed by himself, for money which he had borrowed and afterwards paid. This note bore the names also of Robert L. and George Gillilan; and Nathan Gillilan may have referred to *that*. Besides, he testifies that he never received any notice from the bank of the existence of any note except his own, and did not know of any other note in bank but his own

(until after Robert L.'s arrest) ; that he remembered the conversation with Carnes well, and that conversation was as follows : "I told him I owed a note in bank, had received notice of the maturity thereof, and requested him to tell the cashier I would be over in a few days and pay it, which I did."

Under these circumstances we should feel somewhat disinclined to hold that the rule as to full knowledge on the part of the ratifier, had met with compliance in the case before us. (German Bank vs. Dunn, 62 Mo., 79 ; Owings vs. Hall, 9 Pet., 607 ; Nixon vs. Palmer, 8 N. Y., 398 ; Fletcher vs. Dysart, 9 B. Mon., 413.) We make, however, no express ruling on the sufficiency of the evidence with respect to ratification.

All of the instructions asked by defendant were refused ; and we have incidentally commented on them in the foregoing remarks. They were, in the main, correct.

It has been strenuously insisted here, as it was below, when the instrument sued on was offered in evidence, that the name of Robert L. Gillilan, in order to be sufficient to bind his father, should have appeared on the face of the paper as agent of the latter. But this may well be doubted. Mr. Parsons in his work (Vol. 1, N. & B., pp. 91, 92), holds that, notwithstanding there are grave objections to an agent signing the name of the principal without adding appropriate words showing that he did act as agent, yet such a mode of execution would be valid. And he cites several cases in support of this view. Thus, in Watkins vs. Vince (2 Stark., 368), Lord Ellenborough held such a signing by a son sufficient, where the son had done this in several instances. A similar ruling was made in Neal vs. Ewing (1 Esp., 61). The case of Wood vs. Goodridge (6 Cush., 117), relied on by defendant's counsel, holds differently, but the remarks there were principally applicable to the formal execution of a mortgage by an attorney in fact. The language, however, has a wider significance ; but the case shows that these utterances were mere *dicta*, totally unnecessary to a decision ; nor was the decision placed on that ground, but upon the ground that the attorney was not authorized by the instrument under which he professed to act,

*to make either a note or a mortgage*. In addition to that, four years after the above case was decided, the Supreme Court of Massachusetts expressly held, in Brigham vs. Peters (1 Gray, 139), that a principal might be bound by permitting his agent to use his name and signature ; and the cases in Esp. and Stark., *supra*, are cited with approval. (See also Forsyth vs. Day, 41 Me., 382 [where the doctrine of 6 Cush. *supra*, is denied, both on reason and authority] ; Sto. Agen., § 147 ; Hefner vs. Vandolah, 62 Ill., 483 ; 1 Daniel Neg. Instr., § 299, and cas. cit. ; Mechanics' Bank vs. Bank of Columbia, 5 Wheat., 327.)

There are other points to which our attention has been called by the ingenuity and research of counsel, but we have, for the present at least, sufficiently passed on all the salient and decisive points involved in this record.

The result is, that the judgment must be reversed, and the cause remanded ; Judge Vories absent, the other judges concur.