NETTIE M. HOLYFIELD, *Appellee*, V. J. W. HARRINGTON
*et. al.* (G. A. PERKINS *et al., Appellants*).

No. 17,058.

SYLLABUS BY THE COURT.

1. NEGOTIABLE INSTRUMENTS—*Material Alteration—Ratification.*
A material alteration in a promissory note may be ratified by
any person affected by it so as to bind him as fully as though
he had authorized it in the first instance.

2. —— *Material Alteration—Ratification—New Consideration
Not Required—Statute Construed.* A new consideration is
not necessary to support the contract of ratification. Section
5377 of the General Statutes of 1909 which provides that
"where a negotiable instrument is materially altered without
the assent of all parties liable thereon it is avoided, except as
against a party who has himself made, authorized or assented
to the alteration and subsequent indorsers" is construed to
mean that any one of the parties to such an instrument may
assent to a material alteration so as to make himself liable
thereon without any new consideration, upon the principle
that he who may authorize in the beginning may ratify in
the end.

3. —— *Material Alteration—Ratification Renews Liability.*
At the request of the payee the maker of a promissory note
after it had been executed and delivered altered the time of
payment from three years to one year. Two of the sureties
on the note afterward indorsed in writing upon the back of
the instrument their agreement to the change of time. *Held*,
that they ratified the change and made themselves liable upon
the note without any new consideration.

Appeal from Wyandotte district court. Opinion
filed May 6, 1911. Affirmed.

*James F. Getty*, and *David F. Carson*, for the appellants.

*Daniel J. Maher*, and *Jacob S. Detwiler*, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Nettie M. Holyfield loaned to J. W. Har-
rington $1000 and took his note for that amount dated
December 12, 1907, due three years after date, signed
by J. W. Harrington, with Mattie Harrington, G. A.
Perkins and John A. Stark as sureties.  Two weeks
afterward Nettie M. Holyfield went to the home of Har-
rington and informed him that the time of payment
was longer than she desired and Harrington altered
the note by scratching out the words "three years" and
writing in the words "one year."  The note as changed
reads as follows:

"$1000.    One year                DECEMBER 12, 1907.
       *Three years* after date we promise to pay
to the order of Mrs. Nettie M. Holyfield, one thousand
dollars, at  .  .  .  Value received, with 7 per cent
from date until paid. ' Interest payable annually.
    No............Due Dec. 12, 1910.

                        J. W. HARRINGTON,
                        MATTIE HARRINGTON,
                        G. A. PERKINS,
                        JNO. A: STARK."

A day or two afterward Nettie M. Holyfield took
the note in its changed condition to two of the sureties,
Perkins and Stark, and asked them to consent to the
note as altered.  Thereupon they signed on the back
of the note the following memorandum:

"We agree to and except change of time from three
years to one year.                G. A. PERKINS,
                        JNO. A. STARK."

In an action brought on the note as altered Nettie
M. Holyfield recovered judgment, from which the sure-
ties Perkins and Stark appeal.

The change in the time of payment was a material
alteration.    (Laws 1905, ch. 310, § 132, Gen. Stat.
1909, § 5378.)    The contention of the appellants is
that there was no consideration for their agreement

to be further bound by the note, that the material alteration in the original note released them, and that a new consideration was necessary to support the new agreement. A material alteration in a negotiable instrument made without the consent of a party will discharge him. (*Horn v. Newton City Bank*, 32 Kan. 518; *Bank v. Wangerin*, 65 Kan. 423.) But a party who consents to such alteration or authorizes it to be made will be bound by the instrument (Laws 1905, ch. 310, § 131, Gen. Stat. 1909, § 5377) and it can not be doubted that such alteration may be ratified by the person affected by it so as to bind him as fully as though he had authorized it in the first instance. (*Stewart v. First Nat. Bank*, 40 Mich. 348; *Goodspeed v. Cutler*, 75 Ill. 534; *First National Bank of Trenton v. Gay, et als.*, 63 Mo. 33.)

"It is quite obvious that where all the parties to a bill or note expressly agree to a change in any of its terms that they can not complain of such change as an alteration. They have as much right to change as to make a contract. And where all do not consent, those consenting are bound, while the rest are discharged. Consent may be given before the change is made, or it may be given afterward by ratification. It may be express, or it may be implied from custom, or from the acts of the parties." (2 Daniel, Neg. Inst., 5th ed., § 1401.)

(See, also, 3 Randolph, Com. Paper, 2d ed., § 1766. Tiedeman, Com. Paper, § 396.)

The ratification of such an alteration will be implied where the facts are such as to warrant the implication. (*Weed v. Carpenter* [N. Y. Supr. Ct.], 10 Wend. 403; *Bell v. Mahin et al.*, 69 Iowa, 408.)

It is not necessary in the present case to resort to implication because the appellants indorsed upon the instrument itself their written consent to the alteration. The real question here is whether a new consideration is necessary to support the contract of ratification. On this there is a slight conflict, but the

great weight of authority is against the necessity for a new consideration. As a matter of fact, no independent consideration is required in the case of an ordinary surety or accommodation indorser, and there is no sound reason for requiring one in the case of ratification where by some act of the holder the surety has been released. The following cases are frequently cited as holding that a new consideration is necessary:

*Warren, etc., v. Fant's Trustee,* 79 Ky. 1; *Mulkey v. Long,* 5 Idaho, 213; *Wilson v. Hayes,* 40 Minn. 531.

In the latter case the alteration was fraudulent and amounted to a forgery by the holder, and in the opinion it was said that no case has been found "where it has been held that a forged instrument can be ratified so as to give the forger himself a right of action upon it." (p. 540.) In the opinion it was further said:

"If the alteration was not fraudulent, so that it did not destroy the instrument, or at least did not extinguish the debt, we can see how a subsequent assent to it would create a liability on the instrument as altered. Parties can alter their contract by mutual consent, and this requires no new consideration, for it is merely the substitution of a new contract for the old one, and this is of itself a sufficient consideration for the new. And what a party may assent to when done he may assent to afterward, so as to bind himself, if there be a consideration to support it." (40 Minn. 540.)

It is apparent therefore that the case is in accord with the weight of authority upon the precise question involved here.

Among numerous cases holding that no new consideration is necessary are the following:

*Goodspeed v. Cutler,* 75 Ill. 534; *Pelton v. Prescott,* 13 Iowa, 567; *Stewart v. First Nat. Bank,* 40 Mich. 348; *Wester v. Bailey,* 118 N. C. 193; *Montgomery v. Crossthwait,* 90 Ala. 553; *Payne, Ex'r, v. Long,* 121 Ala. 385; *Kilkelly v. Martin, impleaded, etc.,* 34 Wis. 525; *National Bank v. Rising,* [N. Y. Supr. Ct.] 4 Hun 793; *Prouty v. Wilson,* 123 Mass. 297; *First*

*National Bank of Trenton v. Gay, et als.*, 63 Mo. 33.

In the latter case the Missouri court used this language:

"There have been many refinements adopted about this doctrine of ratification; refinements which savor more of subtlety than of sound judgment. With some exceptions, not necessary to be adverted to here, the general proposition is, however, undoubtedly correct, that *he who may authorize in the beginning, may ratify in the end.* . . . And there is therefore no force in the point urged on our attention, that there would have to be a new consideration in order to attach validity to a confirmatory act." (63 Mo. 39.)

Under the title "Alterations of Instruments" the editor of Cyc., after citing a few cases *supra* to the contrary, says:

"But the better rule seems to be that any one of the parties to an instrument who may have become discharged because of an alteration therein may ratify the unauthorized act so as to make himself liable without any new consideration, upon the principle that he who may authorize in the beginning may ratify in the end." (2 Cyc. 172.)

(See, also, same title in 2 A. & E. Encycl. of L. 259 and in 3 A. & E. Enc. L. & P. 449. And to the same effect is *State v. Paxton*, 65 Neb. 110, 131, where the altered instrument was an official bond.)

Moreover, the question seems to be controlled by section 5377 of the General Statutes of 1909, which expressly provides for the ratification of altered instruments. It reads:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon it is avoided, except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers; but when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

No mention is made of any new consideration being

required in order to bind the assenting party, but the construction we give to the language is that no independent consideration is necessary to bind any party to the instrument, surety or otherwise, who has himself made, authorized or assented to a material alteration.

The contention is made that the court erred in directing a verdict and that appellants were entitled to submit to the jury the question whether they signed the memorandum with knowledge of all the facts, and particularly whether the appellee concealed from them that one of their cosureties, Mattie Harrington, had been released. The rule is that whether the alteration is material is a question of law for the court and whether it was made with the consent of the parties is usually a question of fact for the jury. (Tiedeman, Com. Paper, § 396 and cases cited.) Here the ratification was in writing, signed by the appellants, and its effect was a question of law for the court the same as any other part of the instrument. Besides, both of the appellants testified that they signed the memorandum intending thereby to give their consent to the alteration, and there was no evidence of any misrepresentations and neither of the appellants claimed that any had been made. There was no controverted question of fact to submit to the jury, and the court rightly directed a verdict.

The judgment is affirmed.