No. 30,903.

JACOB BARON, *Appellant*, v. WILLIAM O. LYMAN, DR. WILL LYMAN and THE KANSAS RESERVE STATE BANK, *Appellees*.

(18 P. 2d 137.)

Opinion filed January 28, 1933.

*Hugh T. Fisher,* *Irwin Snattinger,* *E. B. Smith,* all of Topeka, and *David Baron,* of St. Louis, Mo., for the appellant.

*A. E. Crane* and *Kenneth Briggs,* both of Topeka, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action for the specific performance of a contract for the purchase of the good will, merchandise, machinery, equipment, fixtures, etc., of one engaged in the selling, wholesaling and distribution of magazines, newspapers and cards in the city of Topeka, and having the agency for the distribution of numerous periodicals and newspapers. The trial court sustained the motion of defendants for judgment on the pleadings. Plaintff has appealed.

It appears necessary to set out quite fully the pleadings and the procedure in the trial court. The petition alleged that plaintiff resides at St. Louis, and defendants at Topeka; that on March 16, 1931, plaintiff entered into a written contract with the defendant, William O. Lyman, for the purchase of the business, good will and assets of a wholesale and distributing magazine, newspaper and publication business in the city of Topeka, a copy of which contract was attached; that by this contract plaintiff was to pay William O. Lyman $8,650, payable $2,000 cash, $6,000 to be placed in escrow with defendant bank and to be delivered to Lyman in thirty days on his compliance with the conditions of the contract, and assumed the payment of thirteen notes of $50 each, payable to the defendant, Dr. Will Lyman, secured by a chattel mortgage on a truck; that prior to executing the contract William O. Lyman represented to plaintiff the business would show a net profit of about $5,000 per year; that the contract provided defendant William O. Lyman would procure for plaintiff representation of various publishers, which was a substantial value of the business, and if the publishers would not approve the transfer of the business to plaintiff the contract would not become binding; that within two days, and before plaintiff took

charge of the business, various publishers—enough to represent a substantial part of the business—refused to sanction the transfer to plaintiff; that plaintiff then requested the return of the $2,000 paid and the release of the $6,000 in escrow, which request was refused; that thereafter defendant William O. Lyman procured one W. H. Palmer, who was acceptable to the publishers, and who took charge of the business, with the consent of the two Lymans, defendants; that Palmer surrendered to plaintiff business of the value of $2,800; that by reason of the failure of William O. Lyman to comply with the terms of the contract plaintiff had sustained a loss of the difference between $8,650 and $2,800, in the sum of $5,850, together with loss of profits and expenses of $200; that a copy of the contract and plaintiff's certified check for $6,000 were in escrow with the defendant bank, and might be delivered to the defendant William O. Lyman unless the bank were restrained from so doing. The prayer was for judgment for $6,050 against William O. Lyman; that the thirteen notes for $50 each to Dr. Will Lyman be surrendered, and that the defendant bank be restrained from delivering the certified check.

The material portions of the contract, a copy of which was attached to the petition, may be stated, with quotations when necessary, as follows: It named Jacob Baron, the plaintiff here, as purchaser, and William O. Lyman, one of the defendants here, as seller.

"*Whereas,* Seller has for a period of time been engaged in the selling and wholesaling and distribution of magazines, newspapers, cards, etc., in the city of Topeka, Kansas, and has the agency for the distribution of numerous periodicals and newspapers, and

"*Whereas,* It is the desire of the parties hereto that the purchaser purchase from the seller the good will of said business, together with the automobile truck, Model AA—one and one-half ton, Motor No. 3211681—1930 Model—and machinery, equipment and fixtures, merchandise, etc., all upon terms more particularly hereinafter set out:

"*Now, therefore,* . . . it is understood and agreed . . . The purchaser hereby purchases from the seller and the seller hereby sells to the purchaser the good will of the business now conducted by him of selling at wholesale and distributing magazines, periodicals, newspapers, post cards, and the machinery, equipment and fixtures belonging to said business located in part at No. 930 Monroe street, in the city of Topeka, Kansas, and which consists in part of one certain Ford automobile truck purchased in October, 1930, iron safe, check protector, adding machine, Royal typewriter, duplicating machine, three desks, chairs, counters, shelving, bins and other articles not herein specifically mentioned but which had been used in connection with said business. Seller also hereby sells to purchaser all the bags and old paper and all nonreturnable

publications or newspapers other than those of issues not yet put on sale. All the foregoing are warranted by the seller to be free and clear of liens and seller covenants that he hereby transfers good title thereto. . . ."

There are provisions by which the seller agreed to deliver ledgers, books of accounts, customers' lists, etc.; to assign insurance on the truck; to pay all accounts due to March 16, 1931; to remain with the purchaser thirty days to assist him in the business; not to engage in the business in Topeka, or within twenty-five miles thereof, for ten years, except as to certain named publications. Then appears this clause:

"Seller agrees that he will assist purchaser in obtaining the agencies for the sale and distribution of magazines, newspapers and periodicals now sold and distributed by seller."

This is followed by a paragraph stating the consideration, and how and when to be paid, followed by this:

"*Whereas,* The principal consideration for the payment of said sum of $8,-650.00, hereinabove mentioned, is the sale and transfer of the good will of said business and the appointment of the purchaser as agent and distributor by all the publishers who are now doing business with the seller.

"*Now, therefore,* it is agreed that should either or both of the following listed publishers refuse to accept purchaser as their agent that the seller shall refund to the said purchaser the sum set after their names, as follows:

The Chicago Herald and Examiner............................ $300.00
The International Magazine Co. (Publishers of the Cosmopolitan and Good Housekeeping Magazines)........................ $200.00

"And, it is agreed further that should either or both of said publishers later accept the purchaser as their agent, the latter shall repay to the seller the sums refunded less one-fifth of said amounts as above enumerated."

The remaining provisions relate to deposits and the adjusting of accounts with publishers and others.

Defendant William O. Lyman demurred to the petition on the ground it did not state facts sufficient to constitute a cause of action. He also moved to set aside the restraining order which had been issued to the bank. The demurrer and motion came on to be heard. Evidence was taken on the motion, which we shall discuss later. The court sustained the demurrer, and filed a written opinion thereon, as follows:

"I am satisfied that this petition does not, in its present shape, state a cause of action.

"The defendant William O. Lyman did not agree or guarantee absolutely to turn over to plaintiff the agencies for the sale and distribution of magazines, etc. His agreement was:

" 'Seller agrees that he will assist purchaser in obtaining the agencies for the sale and distribution of magazines, newspapers and periodicals now sold and distributed by seller.

" 'There is no allegation sufficient to constitute a breach of this agreement.'

The recital in the contract is:

" '*Whereas,* The principal consideration for the payment of said sum of $8,650 hereinbefore mentioned is the sale and transfer of the good will of said business and the appointment of the purchaser as agent and distributor by all the publishers who are now doing business with the seller.'

"This recital seems to be only for the purpose of providing the penalty for failure to obtain the agency for two publications. It is significant that only these two are mentioned, and in my judgment, this recital does not modify, except in the particulars mentioned, the agreement that the defendant would assist the plaintiff in obtaining the agencies. At least, the two clauses must be construed together, and they fail to show an absolute appointment of the plaintiff as agent and distributor for all the publishers.

"The demurrer will be sustained, and twenty days given to amend the petition, if desired. Ruling on the motion relating to the $6,000 check for which has been deposited with the court, will be held for the present.

"It might be added that there is an allegation in the petition that W. H. Palmer was procured by defendant William O. Lyman, and that he was acceptable to the publishers and, with the consent of the defendants, took charge of William O. Lyman's business.

"There is a further allegation that Palmer surrendered to plaintiff business of the value of $2,800. Just what defendant claims about this is a little indefinite, but apparently only that this business so obtained was turned over to the plaintiff and credit given for $2,800. Apparently this was something done by William O. Lyman in the way of assisting plaintiff to obtain the agencies, and I understand that no claim is made of a breach of the contract because of these facts."

No appeal was taken from the ruling of the court sustaining the demurrer.

Thereafter plaintiff filed an amended petition which alleged, in substance, the making of the contract, March 16, 1931, the payment of $2,000 cash, depositing a certified check for $6,000 and the contract with the bank, and assuming the payment of the thirteen notes of $50 each, on that date; that the furniture, fixtures and truck sold plaintiff did not exceed in value $1,000; that at least $7,650 which plaintiff agreed to pay was for the good will of the business, which principally was to consist of the appointment of plaintiff as agent and distributor by all the publishers who were doing business with the seller; that the continuation of the business depended upon such appointment, and the good will of the business had no value if such appointment could not be obtained; that this fact was

recognized in the contract; that such good will was of such value to plaintiff it was not capable of being measured in money; that the contract provided for liquidating damages as to two publishers only; that the appointment of plaintiff as distributor for the other publishers was of the essence of the contract, and that it was contemplated by the parties, should *any* of the other publishers refuse to accept plaintiff as its agent, the agreement should be canceled; that a few days after the contract was executed more than half of the publishers, including the Chicago *Herald* and *Examiner* and the International Magazine Company, refused to accept plaintiff as their agent; that plaintiff immediately requested the rescission of the contract, which request defendants refused; that to represent only the publishers willing to accept plaintiff as their agent would not have permitted plaintiff to make any profit from the business; that when defendants learned many of the publishers would not accept plaintiff as their agent they persuaded plaintiff to transfer to W. H. Palmer the agencies of publishers who had accepted plaintiff as their agent; that defendant William O. Lyman assisted Palmer in and about the duties of such agencies and to secure the agency of publishers who would not accept plaintiff as their agent, and thereby failed to assist plaintiff to secure such agencies; that the defendants, William O. Lyman and Dr. Will Lyman, about April 15, 1931, obtained temporary possession of the contract in escrow at the bank, and without plaintiff's knowledge or consent altered it in a material respect by striking out that paragraph which stated the principal consideration for the payment of the sum of $8,650 was the sale and transfer of the good will of the business and the appointment of the purchaser as agent and distributor by all the publishers who were doing business with the seller; that this was done after they knew the Chicago *Herald* and *Examiner*, The International Magazine Company, Midwest Distributors, Inc., and many others for whom William O. Lyman had acted as agent, had refused to accept plaintiff as their agent, and for the purpose of cheating and defrauding plaintiff by changing their obligation to him; that because of the failure of defendants to perform the contract, because of failure of consideration, and the material alteration of the contract, defendants have lost the right to the certified check for $6,000 and to the payment of the thirteen notes of $50 each; that the defendant William O. Lyman is not financially

responsible, and that plaintiff has no adequate remedy at law unless the bank be restrained from delivery of the check. The prayer of the petition was that Dr. Will Lyman be required to cancel the thirteen notes of $50 each; that the bank be restrained from delivering the $6,000 check to William O. Lyman, and that it be ordered delivered to plaintiff; that plaintiff have judgment for costs, for an accounting, and such other relief as to the court may seem proper.

To this amended petition defendants filed an answer which admitted formal matters and that the parties entered into the written contract of March 16, 1931, a copy of which was attached to plaintiff's petition, generally denied matters not admitted, and alleged: (1) That plaintiff took possession of the property sold him by the agreement between the parties, and later sold the truck without having tendered it to defendants, and later sold a part of the business purchased from defendants to W. H. Palmer for $2,800. A copy of the contract of the sale to Palmer is set out as an exhibit. This contract recites plaintiff is the owner of the property sold to Palmer. (2) That plaintiff first sued for damages and could not now maintain an action to rescind. This last defense was struck from the answer on plaintiff's motion. Plaintiff replied with a general denial and again pleaded the material alteration of the contract as to its enforceability by defendants.

Defendants moved for judgment on the pleadings. In passing on the motion the court held: (1) That the relief sought by plaintiff in the amended petition is, in effect, an effort to rescind the contract, and such relief cannot be granted after an election by plaintiff to sue for damages, which seems to be the relief sought by the original petition. (2) That the amended petition does not state a cause of action in rescission. Plaintiff was given twenty days to file a second amended petition. More than thirty days later, no further petition having been filed, defendants again moved for judgment on the pleadings. Upon the hearing of that motion plaintiff's counsel, in open court, stated that plaintiff stood on the court's former ruling denying judgment on the pleadings, and objected to the consideration of the second motion. Whereupon the court set aside its former orders permitting plaintiff to file a second amended petition, and overruled the motion for judgment on the pleadings.

"And thereupon the court sustains said motion at this time for judgment on the pleadings, and finds:

"1st. That the relief sought by the plaintiff in his amended petition is in effect an action to rescind the contract between the parties, but that the plaintiff is barred from such relief for the reason the plaintiff heretofore brought this action for relief for breach of contract which plaintiff in this action attempts to rescind, and having elected to sue for breach of contract in the original petition he cannot now maintain an action for the rescission of said contract.

"2d. The court finds that the amended petition does not state facts sufficient to state a cause of action for rescission or on any other ground.

"3d. The court further finds that the injunction issued at the commencement of the trial of this case should be set aside and that the money held by reason thereof by the clerk of the court be paid over to the defendant William O. Lyman.

"It is therefore considered, ordered and adjudged by the court that the defendant William O. Lyman have and recover his costs herein taxed at $———.

"It is further ordered by the court that the money held by the clerk of the court in this action by reason of the injunction order issued herein be turned over to the defendant William O Lyman, and that plaintiff have a stay of judgment for twenty days within which to file an appeal bond to stay the judgment herein, said bond to be in the sum of $6,500.00."

The appeal is taken from this ruling and judgment.

Turning now to the legal questions argued. Appellant contends that the amended petition states a cause of action for the rescission of the contract. An analysis of it makes it rather clear that it does not do so. There are no allegations of accident or mutual mistake in the inception of the contract, or fraud or duress which induced its execution. There are allegations of the failure to comply with conditions of the contract, but this is seldom, if ever, a ground for rescinding a contract, the remedy being an action for damages. (9 C. J. 1181; *Alford v. Dennis,* 102 Kan. 403, 170 Pac. 1005; *Gulf Rld. Co. v. Comm'rs of Miami County,* 12 Kan. 482.) There are allegations of a want of consideration, or, more accurately, a partial failure of consideration; but this, under the allegations of the petition, results from the alleged failure of defendants to comply with the terms of the contract. Equity will not set aside a contract merely because it is a bad bargain (*Alford v. Dennis,* supra), nor on the grounds of failure of consideration, unless the failure is so great as to amount to fraud (9 C. J. 1174), which is not contended here. Ordinarily a party seeking to rescind a contract must restore the other party to his original status. (9 C. J. 1207; *Beneke v. Bankers Mortgage Co.,* 119 Kan. 105, 237 Pac. 932, and authorities there cited.) There was no effort to do that here.

Appellant complains of the ruling of the court denying him a right to rescind the contract because the original petition in this case was framed to recover damages. This ruling accords with the previous decisions of this court. (*Ireland v. Waymire*, 107 Kan. 384, 191 Pac. 304; *Cleaves v. Thompson*, 122 Kan. 43, 251 Pac. 429; *Pitt v. Keenan*, 124 Kan. 810, 262 Pac. 567.) Appellant recognizes the force of these decisions, but complains of the rule of law announced in them, and says that the fact a litigant or his attorney may have made a mistake as to his remedy should not preclude him from later pursuing his proper remedy. What is here spoken of as a rule of law is in a sense a rule of business necessity. For example, as applied to the case before us, here is a contract for the sale of a business which has to move along every day. If it does not do so it disintegrates and becomes worthless. It necessarily requires someone to be in charge of it. Plaintiff alleged that within two days after the execution of the contract, and before he actually took charge of the business, he had learned that some of the publishers would not accept him as an agent. Under the original petition filed in this case he took charge of the business and undertook to conduct it, but conceived that he had been damaged by reason of the failure of the seller to comply with some of the terms of the contract, and sued to recover damages. That remedy was open to him. Plaintiff had charge of the business, and defendants had no right to manage or control it. Some weeks or months later he concluded he ought to rescind his contract of purchase, and filed an amended petition to accomplish that purpose. To accomplish that it was essential that he turn the business back to defendants. Business reasons make it inconceivable that he should be permitted to do so after he had taken charge of it and treated it as his own for some time. There was no error in the court's ruling in that respect. In ruling on that point the court would take judicial notice of the original petition filed in the case. (*Hamilton v. McGinnis*, 119 Kan. 719, 241 Pac. 690.)

Appellant, in the amended petition, alleges that defendants altered the contract while it was in escrow in a material respect without the knowledge or consent of plaintiff, and for that reason the contract became void. At the hearing on the motion to set aside the restraining order at the time the demurrer to the original petition was heard, testimony was taken on this point. This testi-

mony tended to show that when the contract was signed by plaintiff and William O. Lyman it was placed in the bank in escrow, together with plaintiff's certified check of $6,000; that at some time between that date and April 15, when the original petition was filed in this action, one of the Lyman defendants and another went to the bank and asked to see the contract. An officer of the bank showed it to them, and while they were examining it went to another part of the bank. On his return they had finished examining the contract and left it on a desk. On examining it soon thereafter the officer of the bank observed that ink lines had been drawn through or across one paragraph of the contract as though an effort were made to strike it out or expunge it from the contract, and promptly notified counsel for plaintiff of that fact. In the amended petition it was alleged that defendants fraudulently altered the contract for the purpose of defrauding plaintiff, and that the contract became void by reason thereof. There are two answers to this contention. First, with knowledge of this alleged alteration plaintiff, adopting the contract as originally drawn, sued on it to recover damages, thereby treating such mutilation of the contract as had been made as a spoliation as distinct from a material alteration. Defendants' demurrer to the original petition necessarily conceded that the contract made was the one mentioned in the petition, and a copy of which was attached thereto (*White v. Smith*, 79 Kan. 96, 98 Pac. 766); and the trial court, in ruling on the demurrer, passed on the contract as originally written. Second, an analysis of the contract discloses that the paragraph of the contract alleged to have been mutilated is not a material provision of the contract; that is to say, the legal effect of the contract would have been the same if this paragraph had never been in it, as the following analysis of the contract will disclose: The contract, after reciting that William O. Lyman was the owner of the business, specifically classified what was to be sold roughly under three heads: (1) The good will of the business, (2) the machinery, equipment, etc., and (3) bags, old paper, etc. All of this was "warranted by the seller to be free and clear of liens," and the seller covenanted to give "good title thereto." Agencies with publishers were treated as a different thing from any of those just mentioned. With respect to that the contract provided that the seller would "assist purchaser in obtaining the agencies." That is the only

obligation of the contract there was with reference to such agencies, except that the parties recognized there should be a difference in the amount paid for the business in the event two of the publishers declined to recognize plaintiff as their agent. As a preface to a provision pertaining to that appears the paragraph alleged to have been later mutilated, as follows:

"*Whereas,* The principal consideration for the payment of said sum of $8,-650.00, hereinbefore mentioned, is the sale and transfer of the good will of said business and the appointment of the purchaser as agent and distributor by all the publishers who are now doing business with the seller."

In this paragraph the good will of the business is treated as a thing distinct from being appointed agent of the publishers. It recites that the principal consideration of the contract was those two things, not the equipment and old papers, but (1) the good will of the business, and (2) the appointment of plaintiff as agent and distributor by all the publishers who were then doing business with the seller. Appellant gives much stress to the word "all" in this paragraph. With that thought under consideration, and with the obligation of the contract up to that point, in so far as it pertained to agencies, being that the seller would assist the purchaser to obtain such agencies, the contract made it the duty of the seller to assist the purchaser to secure agencies from the publishers, but there was to be no diminution of the consideration if such agencies were not secured, except as to the two named. It is clear from reading the contract that had this paragraph last above quoted been omitted entirely the contract would have meant exactly the same. It is worthy of note, also, that the relief the purchaser would have if some of the publishers did not accept him as their agent was a diminution of the amount to be paid. In other words, it is damages as distinct from rescission. There is nothing in the contract at any place indicating an intention to set aside the contract as a whole because some of the publishers declined to recognize plaintiff as their agent.

We wish to be understood as not approving in any degree the alteration of a contract by one of the parties without the knowledge or consent of the other. Such conduct heretofore has been denounced by this court in strong language, and the court has repeatedly refused to give any relief to a party who has altered such an instrument in a material respect.

(*Fraker v. Cullum,* 21 Kan. 555; *Johnson v. Moore,* 33 Kan. 90, 5 Pac. 406; *Davis v. Eppler,* 38 Kan. 629, 16 Pac. 793; *Willard v.*

*Ostrander*, 51 Kan. 481, 32 Pac. 1092; *Bank v. Wangerin*, 65 Kan. 423, 70 Pac. 330; *Hocknell v. Shely*, 66 Kan. 357, 71 Pac. 839; *Insurance Co. v. Martindale*, 75 Kan. 142, 88 Pac. 559; *Kurth v. Bank*, 77 Kan. 475, 94 Pac. 798; *National Bank v. Hoover*, 114 Kan. 394, 218 Pac. 1003; *Holloway v. Gano*, 120 Kan. 256, 243 Pac. 317; *Fulton v. Farmers Nat'l Bank*, 122 Kan. 400, 252 Pac. 242; *McCormick v. Lauber*, 7 Kan. App. 730.) But here the parties alleged to have altered the contract are seeking no relief by reason thereof. They are simply defending an action brought by the other party on the contract as originally drawn, and conceding the contract to be as originally drawn. But we pass that thought. It is always the function of a court to interpret written contracts, and when it is charged that a contract has been altered in some material respect it is the duty and function of the court to interpret the contract and to determine whether the alleged alteration is of a material element of the contract. (2 C. J. 1292; *Holyfield v. Harrington*, 84 Kan. 760, 115 Pac. 546.) It is uniformly held that changes may be considered immaterial where they are not prejudicial, or where the liability of the party complaining is not increased or enlarged by them. (2 C. J. 1174.) Our own decisions accord with this view. (*Reed v. Culp*, 63 Kan. 595, 66 Pac. 616; *Bank v. Nordstrom*, 70 Kan. 485, 78 Pac. 804; *State v. Schaeffer*, 74 Kan. 390, 86 Pac. 477; *Gas Co. v. Fletcher*, 81 Kan. 76, 105 Pac. 34.) In the light of these authorities we feel compelled to hold that the alteration of the contract alleged to have been made in this case is not a material alteration, and hence that it furnishes no basis for the rescission of the contract.

We find no error in the record, and the judgment of the court below is affirmed.

THIELE, J., not participating.